## MONROE COUNTY, FLORIDA v CORNELL, et al.

### Case No. 87-809-CA-18

Sixteenth Judicial Circuit, Monroe County

November 1, 1988

### APPEARANCES OF COUNSEL

**Calvin Allen,** Assistant County Attorney, for plaintiff.
**Kenneth F. Hoffman,** for defendants.

### OPINION OF THE COURT

RICHARD G. PAYNE, Circuit Judge.

### *DECLARATORY JUDGMENT*

The Rights to be Declared in this cause concern the legal status of three Bed and Breakfast businesses conducted in residentially zoned districts prior to adoption of the present Monroe County Land Development Regulations on September 15, 1986. The Plaintiff seeks to prohibit such businesses as a prohibited hotel use in a residentially zoned district whereas the defendants seek to continue operation as "grandfathered" permissible residential accessory uses under the old Monroe County Zoning Code. The Defendants prevail under the following findings of fact, conclusions of law and declaration of rights.

# I. FINDINGS

## A. FACTS COMMON TO ALL PARTIES.

Bed and Breakfast operations carried out in the instant case involve three single family homes located in the unincorporated area of Monroe County on the same road in the same subdivision each independently renting vacant bedrooms in their homes to members of the public on either a daily or weekly basis during six months of the year.

There are no commercial roadside signs or directions advertising the properties as B & B's and the outward appearance of each structure is that of a large single family house. Each residence has a $3' \times 8''$ sign at the driveway entrance containing the name of the property,—"The Barnacle", "Deer Run" and "Casa Grande". Each homeowner relies on referrals from friends, neighbors, past patrons and B & B central reservation agents for its patrons. Without such a referral no traveler would be able to locate the properties or know that the properties are B & B's, and without referral no traveler would be a welcome guest at any of the three homes.

Each structure was built as the primary residence of the homeowner and remains the residence of each. There have been no divisions in any of the houses to separate the family living quarters from the area used or accessible to the guests. Only couples are welcome and each homeowner has rules prohibiting pets or children.

In no instance are more than three bedrooms rented and none of the rooms are numbered or equipped with locks.

There are no reception areas and the defendants hire no employees. Other than the use of the bedroom and a bathroom there are no other accommodations for the guests. There are no swimming pools, golf, tennis or shuffleboard courts. There is no room service and no pay telephone or soft drink machines on the premises. Parking is on the property either underneath the stilt structures or in a parking area adjacent thereto, neither of which can be seen from the road.

In the morning the homeowner serves the guest a breakfast.

There has never been a problem with guests getting lost and bothering neighbors.

When the bedrooms are not being used for B & B guests they are used by visiting members of defendants' families. Rooms are rented only during the tourist season when the defendants are present. It was uncontradicted testimony that, for many years prior to the adoption of

**70**

the present County Land Use Plan, it was normal practice for many Monroe County residents to rent rooms in their homes to guest on a daily or weekly basis. The Chamber of Commerce and Tourist Development Council have encouraged the rental of rooms due to the scarcity of motel rooms in the area.

There- is not now nor has there ever been a Bed and Breakfast Zoning category in Monroe County, and such operations do not fit within the zoning category of "Home Occupation" which could be approved for residential zones as a "vocation, trade, or profession", nor do defendants' B & B's qualify as "hotel" or "motel" operations under zoning code definitions and they do not constitute "Rooming or Boarding Houses" as that definition requires that more than three rooms to be devoted for the accommodation of guests and each defendant rents no more than three rooms.

Effective September 15, 1986 the County adopted a Comprehensive Land Use Plan by which terms each defendant's property was rezoned "IS — Improved Subdivision" such classification being basically a residential zoning classification.

Over the years each defendant conscientiously collected the additional 10% special tourist state sales tax from each patron and has paid over said moneys to the revenue authorities.

In accordance with the provisions of the Comprehensive Lane Use Plan of 1986, Sections 3-101, N-7 and Section 7-102, each defendant applied to the County for grandfathering under the nonconforming use provisions of the plan but were denied that status on the stated ground that defendants' B & B operations were ineligible because they were a lawful use prior to the rezoning.

In July of 1987, the defendants were cited by the County Code Enforcement Department for operating "hotels" in an Improved Subdivision zoning district.

## II. FINDINGS AS TO SPECIFIC DEFENDANTS

### A. "THE BARNACLE".

The Barnacle is a single family structure owned by Stephen and Joan Cornell since 1972. The structure contains nine rooms in which the Cornells raised two children. The B & B operations started in November of 1982 and the three rooms rented were the rooms previously occupied by the Cornell children who have since grown and left the home. Breakfast is served by Mrs. Cornell in her kitchen and the guests share the Cornell bathrooms. The longest period that any guest has stayed on the property was approximately seven days. Mrs. Cornell

71

cleans the rooms and prepares the breakfasts and Mr. Cornell does the maintenance and yard work.

Before September 15, 1986 the Barnacle was zoned GU. On February 7, 1985 the Barnacle applied for an occupational license from the County but was refused.

## B. "CASA GRANDE".

The "Casa Grande" is a single family home adjacent to "The Barnacle". It is home built by Mr and Mrs. Jon Threlkeld to raise the Threlkeld's five children. The structure contains 14 rooms, three of which are used for B & B operations, which commenced in 1982. Identical to "The Barnacle" the Zoning classification of "Casa Grande" prior to the adoption of the Comprehensive Land Use Plan in 1986 was GU.

The maximum number of guests allowed at one time is six. Guests stay overnight and join the Threlkelds for breakfast in the morning. The Threlkelds work less than three hours a day when operating as a B & B and hire no employees.

## C. "DEER RUN".

"Deer Run" is a single family structure on a one half acre site built by Mrs. Sue Abbot in 1984 under the zoning classification RU-1. B & B operations in June of 1986.

The maximum guests allowed at "Deer Run" are fur as the home is a three bedroom, three bathroom structure. A yardman comes once a month for three days. Mrs. Abbot does the cleaning and cooking of breakfasts which are served in her kitchen. "Deer Run" is usually at full occupancy with guests January through March. Mrs. Abbot allows no smoking, alcohol, pets or children at "Deer Run".

Mrs. Abbot receives referrals from an organization known as Bed and Breakfasts U.S.A. and a referral service located in Pennsylvania.

## III. CONCLUSIONS OF LAW

This Court begins its analysis by starting with the well known principle of zoning law that changes in zoning regulation do not usually act to limit a landowner's right to continue to devote his property to the uses that were made of the property at the time the regulations were adopted, for to do so would be an injustice and an unreasonable hardship if the property owner were forced to cease an otherwise established lawful business. *Fortunato v City of Coral Gables,* (Fla. 1950) 475 So.2d 321.

Therefore the question to be answered is whether defendants' Bed and Breakfast operations were lawful activities under the zoning classification which existed when they began these activities for if lawful, defendants are entitled to have their use of land protected.

The defendants' operations do not fit within any conceivable zoning classification or definition under the old zoning code which would operate to preclude their activities.

The defendants are not engaged in "hotel" or "motel" operations as 10 or more sleeping rooms are required for a "hotel" and two or more"units" or "buildings" are required before qualifying as a "motel". "Rooming and Boarding House" provisions are equally inapplicable as more than three rooms must be rented to qualify.

There is not now nor has there ever been a Bed & Breakfast zoning classification in Monroe County and B & B activities, or the occasional renting of a room by a home owner, do not fit the zoning category of "home occupation" for which such activities could be approved by the Zoning Board as a special exception in a residentially zoned district as it is arguable, at best, that the same would fit the zoning definition of a "vocation, trade or profession."

It has been argued that under the zoning definitions of "accessory use" contained in the old Monroe County Code, Section 19.5, B & B's are precluded in GU and RU-1 districts.

That Section reads:

"No accessory use shall be permitted which is not otherwise permitted as a principal use in the district in which both the principal use and accessory use are proposed."

That language, when applied in the GU district, would mean that a GU district site used for a single family dwelling could only have as an accessory use another authorized principal use for the GU district, i.e., a single family house and a club or lodge; or a single family house with an accessory use of a cemetery. Such a construction would lead to an absurd result which the Court in its interpretation of ordinances is duty bound to avoid. *Gulf Coast Home Health Services of Florida, Inc. v Department of Health and Rehabilitative Services,* (Fla. 1st DCA 1988) 527 So.2d 262.

Prior to the present zoning ordinance "The Barnacle" and "Casa Grande" operated under a GU - zoning classification, which classification provided that a permissible use was "a single family dwelling with their customary accessory uses."

In the case of *Zalarich v Monroe County,* (Fla. 3d DCA 1985) 467

73

So.2d 1088, the term accessory use was defined as " . . . one which is incidental or subordinate to the principal use of a parcel permitted by the zoning law."

The testimony of Mr. Donald Craig, current Directory of the Monroe County Planning Department, was that it is a customary, incidental use of a residence to have overnight guests but that payment of compensation by guests would transform the use from an incidental use to a principal use.

There can be no argument that a normal incidental use of a single family dwelling would be the practice of renting the entire dwelling to a tenant for stated periods of time. The fact that this is a commercial or profit making activity has never been thought to require zoning approval as a vocation, trade or profession as a home occupation or to first require commercial zoning. Likewise, the fact that the landowner would advertise in the newspaper that his home was for rent would not thereby require a zoning change to commercial as the primary use of the property would remain residential.

An excellent discussion on the parameters of "residential accessory uses" is found at 54 ALR 4th at 1034, pages 1074-1076. In the cases there cited, courts have found that in instances where the house has been divided into separate living units with separate facilities and separate electrical wiring, even in instances where it was to be used without charge by friends or relatives, that the same would not constitute a permissible accessory use because separate kitchen and plumbing facilities with separate wiring would not be a customary practice. *Sullivan v Anglo American Investment Trust, Inc.* (1937) 89 N.H. 112; 193 A. 225.

In another case cited room rental was found not to be a permissible accessory use where a three story house with a basement was gradually, over a period of time, converted into 11 separate living units where the owner lived in one unit and leased seven nonhousekeeping units because the main use of the structure had become rentals as opposed to a structure used for family living. *Keseling v Baltimore* (1959) 220 Md. 263; 151 A.2d. 726. The *Keseling* court adopted the test set forth in the New York case of *Baddour v Long Beach* (1938) 279 NY 167; 18 NE 2d 18; 124 ALR 1003, rev. den 279 NY 794, 19 NE 2d 90, 124 ALR 1010, app. dismd. 308 U.S. 503, 84 L.Ed. 431, 60 S. Ct. 77

" . . . did the owners use the house mainly as their residence and incidentally keep boarders or did they occupy the house as a place

74

incidental and convenient to their business of renting rooms and apartments?"

In *Baddour* the zoning department's rule of thumb was to consider the rental of four or less rooms as an accessory use whereas five or more would be a forbidden commercial use. The *Baddour* court noted that enactments in other jurisdictions limited the number of rental rooms qualifying as permissible residential accessory uses to between four and six rooms.

This Court adopts the common sense test used in *Baddour* and *Keseling*. The test when applied to the three properties involved in this controversy makes the outcome clear. In no instance shown to the court are more than three rooms rented per structure and the greater part of each home is devoted to family use. The rental of rooms is clearly incidental and therefore accessory to the primary family use of the structure under the GU and Ru-1 zoning classifications. Defendants cannot be said to occupy their homes as a place incidental and convenient to their business of renting rooms.

The uses being deemed permissible accessory uses under GU and RU-1 zoning classifications and defendants Cornell, Threlkeld and Abbot having never abandoned such lawful accessory use and have followed the provisions of the Comprehensive Land Use Plan of 1986 and registered their Bed and Breakfast use with the plaintiff, they therefore have the right to continue such lawful use after the change in zoning. *Fortunato v City of Coral Gables,* supra.

The Court having decided that the use was lawful before rezoning, the Court will not address the issue of whether a Bed and Breakfast is permitted under the present IS zoning classification.

## IV. DECLARATION OF RIGHTS AND DUTIES

1. The defendants have the right to continue to rent extra rooms in their single family dwellings in the same manner as they have in the past, without increase or change in method pursuant to the provisions of Section 7-103 of the Comprehensive Plan.

2. The defendants are entitled to dismissal of the citations filed against them by plaintiff and the same be and the same are hereby dismissed.

3. Each party to bear their own costs.

DONE AND ORDERED in chambers at Key West, Monroe County, Florida this 1st day of November, 1988.