RANEY ET UX. *v.* TOMPKINS ET UX.

[No. 70, October Term, 1950.]

*Decided January 17, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*James H. Pugh,* for appellants.

*L. Vernon Miller,* with whom were *Albert M. Bouic* and *William V. Bouic,* on the brief, for appellees.

HENDERSON, J., delivered the opinion of the Court.

The question raised in this appeal is whether a restrictive covenant in a deed, against the use of land retained by the grantors for purposes of a gasoline filling station, is enforceable by the grantees against assignees of the grantors. Summarizing the material facts, it appears that on March 20, 1942 George C. Shoemaker and wife, the owners of a triangular parcel of land in Montgomery County, known as Triangule Park, conveyed one corner of the tract, designated as parcel A, to the appellees for use as a filling station. There were some 67 lots laid out upon the portion of the tract retained, the two immediately adjacent being designated as lot number 1 in block lettered "F", and lot number 5 in block lettered "E".

This deed, between Shoemaker and wife "parties of the first part", and Tompkins and wife "as tenants by the entirety, parties of the second part", contained the following covenant: "And the said parties hereto of the first part for themselves, their heirs and assign covenant and agree with the said parties hereto of the second part, their heirs and assigns, that for a period of twenty-five years from the date hereof, they will not sell, lease, demise, encumber or convey to anyone other than the said parties hereto of the second part lot numbered One (1) in Block lettered "F" and Lot num-

bered Five (5) in Block lettered "E" in the subdivision hereinbefore mentioned, for use as a gasoline station or as a location to sell automobile tires and automobile accessories and that they will not sell, lease, demise, encumber or convey to anyone, other than the parties hereto of the second part, any of the land owned by the said parties hereto of the first part lying between the road known as the Kensington-Wheaton Road, the Brookeville-Washington Pike (Georgia Avenue Extended) and the Viers Mill Road for use as a gasoline station."

On July 19, 1945 Shoemaker and wife conveyed the retained portion of Triangle Park to Fleming and Mangan as joint tenants. This deed contained the following provision: "Subject to the restrictions on the entire tract as set out in deed of record * * * [dated March 20, 1942] viz., that for twenty-five years from March 20, 1942, Lot 1, Block "F" and Lot 5 Block "E", cannot be used as a location for a gasoline station or for sale of automobile tires, and accessories and for the same period, none of the remainder of the entire tract can be used as the location of a gasoline station."

On February 5, 1948, Fleming and Mangan conveyed three lots at one of the other corners of the triangle to the appellants. This deed contained the following provision: "Subject, however, to a covenant of record against the use as a gasoline station on any part of said lots created in a certain deed * * * [dated March 20, 1942]."

In 1949 the appellants obtained a permit and informed the appellees of their intention to erect and operate a filling station on the corner lot acquired by them. Thereupon the appellees brought a proceeding to enjoin their proposed action. After hearing, the Chancellor issued an injunction, as prayed, for the period of 25 years from March 20, 1942. The appeal is from that decree.

The first point raised by the appellants is that the limitation in time to twenty-five years applies only to the adjacent lots, not to the lot where they propose to erect a filling station; being unlimited as to time, they contend it is unreasonable and unenforceable, citing *Whitmarsh*

*v. Richmond,* 179 Md. 523, 529, 20 A. 2d 161, and *Meade v. Dennistone,* 173 Md. 295, 305, 196 A. 330, 114 A. L. R. 1227. Assuming, without deciding, that a covenant of unlimited duration might be or become unenforceable under some circumstances, we think the time limitation applies to the lot in question, so that the premise upon which this argument rests is unsupportable. Whatever ambiguity there may be in the language of the original covenant, there would seem to be none in the restatement of its effect in the second deed in the chain of title under which the appellants claim. In any event, it requires no grammatical distortion to read the twenty-five year phrase as limiting both of the clauses that follow. We think the construction adopted by the chancellor was correct.

The chief contention of the appellants is that the covenant is personal to the parties to the original agreement and does not run with the land; hence the grantees cannot enforce it against assignees of the grantors.

It appears to be well settled that "a grantor may impose a restriction, in the nature of a servitude or easement, upon the land that he sells or leases, for the benefit of the land he still retains; and if that servitude is imposed upon the heirs and *assigns* of the grantee, and in favor of the heirs and assigns of the grantor, it may be enforced by the assignee of the grantor against the assignee, with notice, of the grantee." *Halle v. Newbold,* 69 Md. 265, 270, 271, 14 A. 662, 663. The same principle applies where the condition is imposed upon the land retained in favor of the land sold. *Halle v. Newbold, supra.* In that case Mr. Poe argued that there was neither privity of estate nor privity of contract, but it was held to be unnecessary to decide whether the covenant ran with the land or not. In *Newbold v. Peabody Heights Co.,* 70 Md. 493, 500, 17 A. 372, 374, 3 L. R. A. 579, Chief Judge Alvey said that it was a general principle of equity "that a restrictive covenant entered into between a vendor and vendee, or lessor and lessee, in respect to the manner of using the property, would be

enforced by a Court of equity, as against the vendee or lessee, and his assigns, without respect to the question as to whether the covenant did or did not, in a legal sense, run with the land. The relief may be furnished either by way of injunction, or upon application for specific performance, according to the circumstances of the case calling for the exercise of equitable jurisdiction", citing the leading case of *Tulk v. Moxhay*, 2 Phillips 774. That case was also cited with approval in the more recent cases of *Kleis v. Katcef*, 160 Md. 627, 636, 154 A. 558; *Meade v. Dennistone*, 173 Md. 295, 303, 196 A. 330, 114 A. L. R. 1227; and *Levy v. Dundalk Co.*, 177 Md. 636, 645, 11 A. 2d 476.

The appellants contend that the covenant in the case at bar, although in a limited area and for a limited time, is designed to limit competition and thus is in restraint of trade. They rely upon a statement in 1 Thompson, Real Property (perm, ed.) § 375, p. 610, that "covenants in restraint of trade cannot be annexed as appurtenant to land or be regarded as an easement in favor of one tenement imposing a servitude upon another." Tiffany, Real Property (3d ed.) § 854, n. 65 and n. 66, notes that there is a split of authority on the point. The Restatement, Property, § 537 (f), states that "a promise that the land of the promisor will not be so used as to compete with a business carried on upon the land of the promisee does not so affect the land of the promisor that it can be made to run with it." Ill. 1 states: "A, the owner of two vacant lots lying side by side, sells one to B who contemplates erecting and operating a drug store upon it. A agrees on behalf of himself and his assigns that no drug store will be operated upon the lot retained. A's promise does not so affect the land as to enable A's successor to be held liable as a promisor upon A's promise." However, in § 539 (k), it is said with reference to the rule laid down in § 537 (f) that "the successor will take subject to any equitable obligations arising out of the promise." See comment on these provisions in Clark, Covenants and Interests running with

the Land, 2d Ed., p. 142, n. 148 and p. 221, n. 35.

It may be true that the covenant against use as a filling station is designed to protect the business conducted on the lot conveyed, rather than the land itself, but under the Maryland decisions, at least, we think that does not prevent relief. In *Clem v. Valentine*, 155 Md. 19, 141 A. 710, the covenant enforced was against the use of the land retained for a general merchandise store, and in *Legum v. Carlin*, 168 Md. 191, 177 A. 287, 99 A. L. R. 536, the covenant enforced was against use by a lessor of his adjoining land as a competing public garage. *Cf. Buffalo Academy v. Boehm Bros.*, 267 N. Y. 242, 196 N. E. 42. *See also Tiffany, Real Property* (3d ed.) § 859.

As to the contention that the covenant is personal, it is sufficient to observe that the covenant in terms binds the vendors and their assigns, in favor of the vendees and their assigns, and thus the intention is clear. *Tiffany, Real Property* (3d ed.) § 862. There is no occasion to gather the intention from a general scheme. *Scholtes v. McColgan*, 184 Md. 480, 483, 41 A. 2d 479; *Jones v. Northwestern Real Estate Co.*, 149 Md. 271, 280, 131 A. 446; *Ringgold v. Denhardt*, 136 Md. 136, 145, 110 A. 321. *Cf. Kleis v. Katcef, supra.* There can be no doubt that the appellants were put on notice of the restriction. *Levy v. Dundalk, supra; Lowes v. Carter*, 124 Md. 678, 684, 93 A. 216.

It is contended, however, that the covenant is personal because it is not universal, but contains an exception in favor of the appellees personally. The covenant is that the vendors will not convey the retained land, for use as a gasoline station, "to anyone other than the parties hereto of the second part". The exception does not in terms extend to assignees of the vendees. Conceding that this exception is personal, we think it does not alter the case. The appellees contend that the exception was merely inserted for the protective purpose of not precluding "the owners of parcel A" from enlarging their gasoline business by acquiring other lots

in the triangle, and should be so construed. We have no doubt that was the intention of the parties. If the vendees should purchase other lots in the triangle for that purpose, while still operating the business on parcel A, it would seem that there would be a merger of the dominant and servient tenements and a release of the restriction, regardless of the express reservation. The vendees could not compete with themselves. *Cf. Nisonoff v. Cerebe*, 1 N. J. Super. 577, 62 A. 2d 496. On the other hand, if the vendees should sell their business on parcel A before purchasing other lots in the retained tract, the exception would probably lapse as soon as the vendees parted with their ownership, for at that moment they would have no connection with either the dominant or servitent tenements. It would seem that the enforceability of a covenant in equity is predicated upon the ownership of some property interest in the land to which the covenant can attach. *Lynn v. Mt. Savage Iron Co.*, 34 Md. 603; *Foreman v. Sadler's Executors*, 114 Md. 574, 579, 80 A. 298; *Levy v. Dundalk Co., supra*, 177 Md. at page 652, 11 A. 2d 476 (citing *London County Council v. Allen*, L. R. [1914], 3 K. B. 642). In any event it is an established rule that some property interest and some threatened damage must be shown to invoke equitable relief.

The equities presented in the instant case, between the vendees and the assignees of the vendors, could hardly be affected by the consideration of possible equities between the vendees and potential assignees of parcel A. That question is not before us, and it may be doubted whether the situation would ever arise, because a purchaser of the business on parcel A would probably insist upon a waiver of the personal right excepted, if indeed, such right could survive a transfer of the business.

Under the circumstances, we see no reason why the assignees of the vendors should be permitted to violate the covenant, of which they had constructive if not actual notice, merely because of a limited exception therein

that would only be material, as between other parties, in the remote contingency suggested.

*Decree affirmed, with costs.*