582 A.2d 493

BELLEVIEW CONSTRUCTION CO., INC.

v.

RUGBY HALL COMMUNITY ASSOCIATION, INC.

No. 70, Sept. Term, 1989.

Court of Appeals of Maryland.

Nov. 30, 1990.

Milissa A. Murray, Royal G. Shannonhouse, Blumenthal, Wayson, Downs and Offutt, P.A., all on brief, Annapolis, for petitioner.

William M. Simmons and Dorothy B. McCullough, both on brief, Annapolis, for respondent.

**154**

Argued before MURPHY, C.J., ELDRIDGE, COLE, RODOWSKY, McAULIFFE and ADKINS *, JJ., and CHARLES E. ORTH Jr., Judge Retired, Specially Assigned.

McAULIFFE, Judge.

We are concerned here with the proper interpretation of a restrictive covenant affecting petitioner's property in the community of Rugby Hall Estates, located in Anne Arundel County. The restriction states that "only one single family dwelling for private residence purposes shall be erected on each lot." The question is whether "each lot" described in the restriction means each lot as conveyed by the developer, or each lot that thereafter may be created by any re-subdivision conforming to the subdivision and zoning regulations of the county as they exist from time to time. We hold that the former interpretation accords with the intent of the parties, whether measured solely by the four corners of the documents creating the covenant, or by those documents as supplemented by other documents of record and by information readily available to grantees, including remote grantees.

Rugby Hall Estates, located on the eastern shore of the Severn River between Ringgold Cove and Asquith Creek, was developed by Rugby Hall Estates, Inc. (the developer). The lots in the first section of Rugby Hall Estates were created by deed, before comprehensive zoning and subdivision regulations had been adopted for this portion of Anne Arundel County. By deed dated 12 January 1953, the developer conveyed two lots, by metes and bounds description, to the initial purchasers. The habendum clause of the deed stated that the property was subject to covenants, restrictions, and conditions created by a deed of restrictions dated 27 March 1952, which had been recorded by the

---

* Adkins, J., now retired, participated in the hearing and conference of this case while an active member of this Court but did not participate in the decision and adoption of this opinion.

developer. Through mesne conveyances, the lots were deeded, in 1977, to Alan and Frances Jackson (the Jacksons). The deed to the Jacksons also accomplished an adjustment of the division line between the two lots. A plat, recorded as a part of the deed, shows lot A was increased in size from 1.71 acres to 2.17 acres, and lot B was reduced from 1.54 acres to approximately 1 acre.[1] It is lot A with which we are here concerned.

In 1982, pursuant to the provisions of the original deed of restrictions,[2] a majority of the owners of the lots in Rugby Hall Estates, together with the developer, executed and recorded an "Extension and Amendment of Deed of Covenants, Restrictions, and Conditions," by which they amended in part and continued in force the original restrictions. Rugby Hall Community Association, Inc. (the association) was substituted for the developer as the party having authority to approve plans for construction, to grant variances from set-back requirements, to approve fences, and the like. The restriction that "only one single family dwelling for private residence purposes shall be erected on each lot" was retained. The Jacksons signed the deed amending and extending the restrictions.

In May of 1983, the Jacksons recorded a plat of subdivision of lot A, creating new lots A and C. New lot A, surrounding the residences earlier constructed at the rear of original lot A, contained 1.247 acres. Newly-created lot C contained .922 acres of unimproved land. On 30 June 1987, the Jacksons conveyed newly-created lots A and C,

---

1. The parties to this action do not complain about the revision of the lot line. The revision ostensibly was recorded to correct an error that occurred when a driveway serving the residence that had been constructed on lot A was found to have encroached on lot B.

2. Paragraph 11 of the 1952 Deed of Restrictions provided as follows:
   All the covenants, restrictions and conditions contained herein shall be in perpetuity, but on or after thirty years from the date of these presents a *majority of owners of the lots* may amend, cancel, annul or abrogate any and all of the covenants, restrictions or conditions by a writing duly executed and properly recorded among the Land Records of Anne Arundel County. (Emphasis in original).

together with lot B, to Belleview Construction Company, Inc. (Belleview), the petitioner.

Belleview proposed to construct a single family dwelling on newly-created lot C and, as required by the restrictive covenants, submitted plans to the association for approval. The association refused to consent to the construction of a dwelling house on lot C, on the grounds that: 1) the original and the amended covenants prohibited such construction because a dwelling had already been constructed on original lot A, from which lot C had been carved; and, 2) the proposed construction would be "contrary to the scheme of development of the community."

Belleview then sued the association in the Circuit Court for Anne Arundel County, seeking declaratory and injunctive relief. Judge A. Chester Goudy, Jr. entered judgment in favor of the association, declaring that the restrictive covenants were valid, and that the clear meaning of the restriction of "only one single family dwelling . . . on each lot" applied to the lots as conveyed by the developer. Thus, he held that although an owner might lawfully subdivide an original lot in accordance with county regulations, that did not create a right to construct an additional dwelling prohibited by the restrictive covenants. Belleview appealed, and the Court of Special Appeals affirmed the judgment in an unreported opinion. We granted Belleview's petition for certiorari, and we affirm.

■ The original and extended covenants are covenants running with the land. They were recorded in a separate instrument, and were referred to in deeds subsequently executed by the developer. They are, by their terms, enforceable by the developer, the association, or any lot owner. The covenants were clearly established as part of a general plan of development for this community. A preliminary paragraph of the original Deed of Covenants recited:

AND WHEREAS 'The Developers' intend to sub-divide a certain portion of said tract of land into lots for sale to the public, which said portion is hereinafter particularly

described, but subject however to certain covenants, conditions and restrictions to run with the land and to be binding alike upon the developers and purchasers, their successors, assigns, heirs, executors and administrators. The deed further provided that "all lots of ground sold out of the ... tract shall be subject to the [described] covenants, conditions, and restrictions...." The developer reserved the right to change or modify the lot lines or method of subdivision of unsold lots without the consent of purchasers, provided the change did not immediately affect the right of any purchaser.

As originally written, the requirement that "only one single family dwelling ... shall be erected on each lot" was qualified by the clause "without the written permission of 'THE DEVELOPERS.'" When the covenants were amended and reimposed in 1982, the qualifying clause was removed.

In construing covenants, "[i]t is a cardinal principle ... that the court should be governed by the intention of the parties as it appears or is implied from the instrument itself." *Live Stock Co. v. Rendering Co.*, 179 Md. 117, 122, 17 A.2d 130 (1941). The language of the instrument is properly "considered in connection with the object in view of the parties and the circumstances and conditions affecting the parties and the property...." *Levy v. Dundalk Co.*, 177 Md. 636, 648, 11 A.2d 476 (1940). This principle is consistent with the general law of contracts. *See Anne Arundel County v. Crofton Corp.*, 286 Md. 666, 673, 410 A.2d 228 (1980) (court, in construing agreement, must first determine from the language of the agreement itself, what a reasonable person in the position of the parties would have meant at the time the agreement was effectuated). If the meaning of the instrument is not clear from its terms, "the circumstances surrounding the execution of the instrument should be considered in arriving at the intention of the parties, and the apparent meaning and object of their stipulations should be gathered from all

possible sources." *Live Stock Co. v. Rendering Co., supra,* 179 Md. at 122, 17 A.2d 130.

If an ambiguity is present, and if that ambiguity is not clearly resolved by resort to extrinsic evidence, the general rule in favor of the unrestricted use of property will prevail and the ambiguity in a restriction will be resolved against the party seeking its enforcement. *Martin v. Weinberg,* 205 Md. 519, 526, 109 A.2d 576 (1954); *Himmel v. Hendler,* 161 Md. 181, 187, 155 A. 316 (1931); *Guilford Ass'n Inc. v. Beasley,* 29 Md.App. 694, 699, 350 A.2d 169, *cert. denied,* 277 Md. 735 (1976). The rule of strict construction should not be employed, however, to defeat a restrictive covenant that is clear on its face, or is clear when considered in light of the surrounding circumstances.

> The courts seem to have generally recognized that there is no public policy against a fair and reasonable construction, in the light of surrounding circumstances, of restrictions designed, in general, to accomplish the same beneficial purposes as zoning.

*Martin v. Weinberg, supra,* 205 Md. at 527, 109 A.2d 576.

> The courts, it would seem, are under a duty to effectuate rather than defeat an intention which is clear from the context, the objective sought to be accomplished by the restriction and from the result that would arise from a different construction.

*Guilford Ass'n Inc. v. Beasley, supra,* 29 Md.App. at 700, 350 A.2d 169. *See also Lake Barrington Shore Homeowners v. May,* 196 Ill.App.3d 280, 143 Ill.Dec. 107, 109, 553 N.E.2d 814, 816 (1990) (rule of strict construction in favor of free use of property not applied to defeat obvious purpose of restriction, even if not precisely expressed).

We think it is clear the limitation that "only one single family dwelling ... shall be erected on each lot" refers to each lot conveyed by the developer. The deed of covenants made specific reference to the intention of the developer to "sub-divide a certain portion of [a] tract of land into lots for sale to the public." The deed further provides that "all lots

of ground sold out of the ... tract shall be subject to the ... covenants, conditions, and restrictions...." The restrictions were for "the mutual benefit to be derived by the developers and the purchasers." The general plan of development was for an attractive and desirable community consisting of lots of substantial but varying sizes, with little or no repetition in shape. Though contemplated, and soon to be put in place, there were no zoning or subdivision regulations controlling this portion of Anne Arundel County at the time the original covenants were recorded.[3] The developer who conceived the community, and those who bought from him, had every right to rely upon the carefully conceived plan of development, and to rest assured that the lots created by the developer and to which the restrictions attached, would not subsequently be divided into such pieces as might satisfy zoning and subdivision regulations which might thereafter be adopted.

The interpretation urged by the association is reasonable and logical. The interpretation urged by Belleview is, at best, only remotely plausible. Indeed, it almost defies common sense to suggest that although "lot" obviously means a lot as conveyed by the developer virtually everywhere it is used in the deed of restrictions, it should somehow be afforded a different meaning, tied to subdivision regulations not then in effect, when it is used in this restriction. An ambiguity does not exist simply because a strained or conjectural construction can be given to a word.

Moreover, if the intent of the parties concerning the meaning of the restriction is to be measured by the circumstances prevailing 30 years later, when the restriction was reimposed, the result is equally clear. During the entire

---

3. Zoning by municipalities in this State was authorized by Chapter 599 of the Acts of 1933. An enabling act relating specifically to Anne Arundel County was enacted as Chapter 551 of the Acts of 1943. Zoning regulations were thereafter enacted for parts of Anne Arundel County. *See Anne Arundel County v. Ward,* 186 Md. 330, 46 A.2d 684 (1946). A comprehensive zoning ordinance was later passed, and became effective 1 July 1952.

intervening period of time, not a single lot was subdivided for the purpose of constructing a second dwelling on an original lot. The long-standing interpretation given the restriction by the developer and all the lot owners furnishes additional evidence of their intent at the time of the reimposition of the restriction.

Belleview relies on several out-of-state decisions to support its position. We find each case distinguishable from the case before us. In *Andrews v. Lake Serene Property Owners Ass'n*, 434 So.2d 1328 (Miss.1983), a property owner was allowed to subdivide lots that were subject to restrictive covenants, and was permitted to build a dwelling on each new lot. The particular covenant at issue provided:

> LOT AREA & WIDTH: No dwelling shall be erected or placed on any lot having a width of less than 50 feet at the minimum building setback line nor shall any dwelling be erected or placed on any lot having an area of less than 17,500 square feet.

The covenants did not specifically prohibit re-subdivision. Each new lot created by the owner's re-subdivision contained at least 20,000 square feet. The significant distinction that we note between the covenant involved in the Mississippi case and the covenant which is before us is the presence in the former of a required minimum area for each building lot. The inclusion of a required minimum area strongly suggests contemplation of re-subdivision, because in the absence of such division the requirement would be unnecessary. Another case relied on by Belleview, *Callaham v. Arenson*, 239 N.C. 619, 80 S.E.2d 619 (1954), is also distinguishable on the same basis.

*Hickson v. Noroton Manor*, 118 Conn. 180, 171 A. 31 (1934), deals with the applicability of a restrictive covenant prohibiting the creation by subdivision of any lot having a "frontage" of less than 100 feet. The property involved was a corner lot having more than the required "frontage" along one street, but less than that required along the intersecting street. The Connecticut Court simply applied the least restrictive of two possible interpretations, and the

result there reached is not inconsistent with our decision in the instant case.

The case of *Turnley v. Garfinkel*, 211 Tenn. 125, 362 S.W.2d 921 (1962), although containing language generally supporting Belleview's position, may also be distinguished on its facts. There, a plat of subdivision and a deed of restrictive covenants pertaining to the subdivision, were recorded within two days of each other. The covenants did not contain any express restriction concerning the size, frontage, or minimum area of any lot, nor did they expressly deny to any owner the right to subdivide a lot. There was included in the covenants, however, a requirement that "[n]ot more than one dwelling shall be built on any lot and maintained thereon at any one time." The Supreme Court of Tennessee approved a re-subdivision of one of the platted lots, and approved the construction of a dwelling on each of the resulting lots. It did so, however, by referring to provisions included by the developer in the original plat of subdivision, which specifically contemplated re-subdivision of the lots when certain conditions were met. The court held that the restrictive covenants had to be read together with the provisions for subdivision appearing on the recorded plat, and thus could not logically be read to preclude re-subdivision and the construction of a dwelling on each lot that met the requirements established by the plat.

More in point, we think, is the case of *Belle Terre Ass'n v. Brosch*, 216 So.2d 462 (Fla.App.1969). There, a covenant running with the land was recorded to require that "only one dwelling house ... shall be erected on any single lot or plot and each dwelling house shall be for one family only." A property owner divided an existing improved lot by a deed of conveyance, and obtained a building permit to construct a dwelling on the additional lot thereby created. The neighborhood association and individual lot owners brought an action for declaratory relief. After distinguishing cases in which the covenants, by the inclusion of minimum lot sizes, demonstrated contemplation of further subdivision, the Florida appellate court held that the restriction

was valid, meant what it said, and prohibited the construction of an additional dwelling.

If this transparent device [division of a lot by deed] is approved, there goes the neighborhood. Thousands of Floridians who have in good faith undertaken to comply with restrictions intended for the benefit of themselves and their neighbors could no longer have confidence that some purchaser could not chop his lot up into the smallest lots permitted by ordinance.

*Id.* at 463. To the same effect, *see Sky Mountain Ranch Subdiv. Prop. O. Ass'n v. Williams,* 12 Ariz.App. 244, 469 P.2d 478 (1970).

The trial judge correctly determined that the clear meaning of the restrictive covenant in the case before us precluded the construction of an additional dwelling on lot C.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED, WITH COSTS.