MARTIN ET UX. *v.* WEINBERG ET AL.

[No. 19, October Term, 1954.]

520

*Decided December 8, 1954.*

522

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*W. Harvey Beardmore* and, *Edwin H. Brownley,* with whom was *Albert J. Goodman* on the brief, for the appellants.

*James C. Morton, Jr.,* with whom were *Rouse & Morton* on the brief, for the appellees.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a decree permanently enjoining the appellants from using lots 27 and 28, Block O, Murray Hill, in the City of Annapolis, for a parking lot. The question turns on the validity and enforceability of certain restrictions in the deeds.

In 1890, the owners of nine of the ten tracts into which a larger tract had been divided by the heirs of James Murray, subdivided these tracts into lots according to a plat known as "Melvin's plan of Murray Hill", which was placed on record in 1896. In 1914, four exchange deeds, which further partitioned certain of the lots among some of the Murray heirs, were placed on record. Each deed contained restrictions, of which the following are typical:

"Upon these express conditions, nevertheless, that the said Sarah Murray Hartshorne, her heirs and assigns, shall not build or erect, or suffer to be built or erected, a building of any character whatever in those portions of Lots Number '22' in Block 'I', and Number '3', in Block 'K', lying between the Northeasterly line of South-

gate Avenue and a building line parallel therewith and distant twenty-five (25) feet, Northeasterly therefrom; * * * nor in those portions of Lots Numbers 19, 21, 35 and 37 in Block 'O' lying between the Southwesterly line of Steele Avenue and a building line parallel therewith and distant twenty (20) feet Southwesterly therefrom.

"And Further, shall not build or erect or suffer to be built or erected, more than one dwelling house, with the necessary outbuildings incident thereto, on each of Lots Number 22, in Block 'I' * * *, Numbers 19, 21, 35 and 37 in Block 'O', all of which said dwelling houses shall be used for residence purposes only; and which said dwelling houses in each of Lots Number 22 in Block 'I', * * * shall cost not less than Three Thousand ($3,000.00) Dollars each and those on each of Lots Numbers * * * 19, 21, 35 and 37 in Block 'O', shall cost not less than two thousand ($2,000.00) each."

It is conceded that not all of the lots conveyed were made subject to the restriction as to use for residence purposes, but it may be stated generally that the restriction applied to all lots fronting on Southgate and Steele Avenues, with the exception of lots 39, 41, 43, 45 and 47 in Block O, adjacent to the rear of certain business properties fronting on West Street, and three lots in Block K, in the same situation. It is true that there were also a few lots in Block O not conveyed in the four deeds and hence unrestricted.

It was shown in the testimony that a resurvey was made in 1932 and placed on record in 1938. This was occasioned by the opening of a new diagonal street known as Fifth Street, and included a renumbering of the lots in the various blocks. Lots 27 and 28, Block O, fronting on Steele Avenue, now comprise all of lots 31, 33, 35 and 37 of the original plat, except for the portions now in the bed of Fifth Street and in the new lots across said street. In addition, lot 27 comprises a small corner of lot 32, formerly fronting on Stewart Avenue, which was unrestricted, and a small corner of lot 39, which was likewise unrestricted.

This suit was originally instituted by the appellees against Robert Taylor and Clara E. Taylor, his wife, who acquired lots 27 and 28 from the Murray heirs. The deed of lot 28 to the Taylors in 1952 contained the provision "subject to restrictions of record pertaining to this development". This sale was effected in 1938 by Mr. Lazenby, a real estate agent. A letter to him from the Murray heirs stated that "lot 28 is made up of portions of lots 33, 35, 37 and 39, as shown on the original plat of Murray Hill," and the division of the proceeds was agreed upon. He testified that he advised the purchasers the property was restricted to use for residence purposes only. The appellants purchased lots 27 and 28 from the Taylors in 1953, while the present suit was pending. There can be no doubt that they had actual knowledge of the claimed restriction.

The appellants do not challenge the fact that the appellees are assignees from the Murray heirs of lots in the immediate vicinity, but contend that the restriction is ineffective because it does not bind the heirs and assigns of the grantors, although it does expressly bind the heirs and assigns of the grantees. Another clause in each deed recited that "The interest hereby conveyed by the said parties of the first part in the above described premises, being an undivided three-fourths (3/4) interest therein now vested in them, and the other undivided one-fourth (1/4) interest being now vested in said parties of the second part, the purpose of this deed is to vest in said parties of the second part the whole title to said described premises in severalty." Each grantee thus retained a one-fourth interest in the particular lots wherein the three-fourths interest was conveyed, and in turn conveyed his undivided interest in the other lots. We think the deeds must be construed together. "Deeds made by tenants in common among themselves for the partition of land should be construed together as one instrument, and the general intent of all the deeds should govern." 4 *Thompson, Real Property* (perm. ed.) § 1963. Before the conveyances the

four heirs held all of the lots involved in common. After the conveyances, each was the grantee of a three-fourths interest from the other heirs. We find from the deeds themselves, and the surrounding circumstances, clear evidence of an intention to bind all of the lots involved. Cf. *Silberman v. Uhrlaub,* 102 N. Y. S. 299, 116 App. Div. 869. The situation is unlike that where land is retained by a grantor without a covenant to bind his assigns. Here no purchaser from any of the parties could take title to any lot except by assignment from a grantee. In legal effect, we think the acceptance of mutual deeds subject to the conditions stated amounted to promises by the grantees, their heirs and assigns, to abide by the restrictions. *Levy v. Dundalk Co.,* 177 Md. 636, 646. Since the promises can be implied from the deeds and surrounding circumstances it is unnecessary to rely upon a uniform general scheme or plan of development. *Raney v. Tompkins,* 197 Md. 98, 101, 103; *Middleton Realty Co. v. Roland Park,* 197 Md. 87, 94; *Clem v. Valentine,* 155 Md. 19, 28. But it may be noted that the fact that a few lots in the tract are unrestricted would not necessarily negative an intention to restrict the lots designated in accordance with a general plan, *Schlicht v. Wengert,* 178 Md. 629, 636, particularly where there is a rational basis for a distinction, or where other owners are not parties to the plan. Cf. *Kleis v. Katcef,* 160 Md. 627, 634.

The appellants contend that if the use of the lots was restricted under the original deeds, the filing of the resurvey plat, changing the numbers and dimensions of the lots in question, abolished the restrictions. We find no merit in the contention. It is true that it would be necessary to closely compare the two plats, even to "superimpose the resurvey over the original plat", as suggested, in order to determine the exact extent of the restricted areas. When this is done, of course, it appears that small corners of the new lots are made up from unrestricted lots, but the Chancellor's decree took this into account. Questions of locations and restrictions

in deeds and plats are usually matters for expert determination, and it seems clear that the purchasers were put on notice by the references in the deeds and contracts of sale, and by actual notice. We find no evidence of an intention to abandon the restrictions in the mere filing of the resurvey. When the appellants purchased their lots in 1953, there was a suit pending in which a decree *pro confesso* against their vendors had been entered upon the theory that the restrictions were in effect. Nor do we find any merit in the contention that there was an acquiescence or waiver, based on a failure to enforce the restrictions against all others. Cf. *Trunck v. Hack's Point Com. Ass'n.*, 204 Md. 193, 196, and *Schlicht v. Wengert, supra.* It appears that a suit against the use of certain other restricted lots for parking purposes is now pending. We think the Chancellor was likewise correct in finding that there was no such change in the character of the neighborhood as to render the restrictions unenforceable on the ground that they have outlived their usefulness. There was abundant evidence to show that the neighborhood always was, and still is, a high-class residential one, aside from the commercial development along West Street.

Finally, the appellants contend that the language of the restrictions does not, in terms, forbid use as a parking lot. The proposal is to lease the lots to the Great Atlantic & Pacific Tea Company for use as a parking lot by the employees and customers of its store on West Street. The prohibition is against building or erecting "more than one dwelling house, with the necessary outbuildings incident thereto, * * * all of which said dwelling houses shall be used for residence purposes only * * *." Applying the rule of strict construction, it is argued that the restriction applies only in the event that a building is erected, and until that time it may be used for any purpose whatever.

We have frequently stated and applied the rule of strict construction in favor of the unrestricted use of property. Cf. *Himmel v. Hendler*, 161 Md. 181, *Osborne*

*v. Talbot,* 197 Md. 105, and *Trunck v. Hack's Point Com. Ass'n., supra.* But this does not mean that language must be so narrowly construed as to defeat its general purpose. Literally, the words "shall not build or erect * * * more than one dwelling house" do not refer to the land itself. But, obviously, a use of the land for "open-air" parking or other commercial use, virtually unknown at the time the restrictions were drafted in 1914, would defeat the general purpose to limit the use of the dwellings contemplated, to residence purposes only. And it may well be that the improvements necessary to render the land suitable for such a use would constitute "building". Cf. *Jenney v. Hynes,* 189 N. E. 102 (Mass.).

There appears to be no Maryland case in point, and the authorities in other states are divided. In *Shaddock v. Walters,* 55 N. Y. S. 2d 635, it was held by a *nisi prius* court that a covenant similar to that in the instant case did not forbid the use of the land as a parking lot. Cf. *Granger v. Boulls,* 152 P. 2d 325 (Wash.) and *Cooke v. Kinkead,* 64 P. 2d 682 (Okl.) (a five to four decision). On the other hand, in the case of *Hoover v. Waggoman,* 199 P. 2d 991 (N. M.), the opposite conclusion was reached. See also *Wilber v. Wisper & Wetsman Theatres,* 3 N. W. 2d 33 (Mich.). Cf. *Mellitz v. Sunfield Co.,* 129 A. 228 (Conn.), *Laughlin v. Wagner,* 244 S. W. 475 (Tenn.), and *Bachman v. Colpaert Realty,* 194 N. E. 783 (Ind.). We think these cases express the better view. The courts seem to have generally recognized that there is no public policy against a fair and reasonable construction, in the light of surrounding circumstances, of restrictions designed, in general, to accomplish the same beneficial purposes as zoning. It may be noted that in the instant case, the area is zoned residential, but a special exception was granted in regard to the lots in question. This fact is not relevant to the question before us, except as it tends to support a conclusion that there has been no marked change in the general neighborhood. Contractual restrictions are neither abrogated

528

nor enlarged by zoning restrictions.  *Metzenbaum, Law of Zoning*, p. 282.

Under all of the circumstances of the case, we find no error in the Chancellor's ruling.

*Decree affirmed, with costs.*