910 A.2d 1064

**SDC 214, LLC**

v.

**LONDON TOWNE PROPERTY OWNERS
ASSOCIATION, INC., et al.**

**No. 94, Sept. Term, 2005.**

Court of Appeals of Maryland.

Nov. 9, 2006.

James C. Praley (Lessans, Praley & McCormick, P.A., on brief), Glen Burnie, for petitioner.

Joseph F. Devlin (Sarah Andrews of Council, Baradel, Kosmerl & Nolan, P.A., on brief), Annapolis, for respondents.

Lawrence P. Fletcher–Hill (Gordon, Feinblatt, Rothman, Hoffberger & Hollander, P.C.), Baltimore, brief of Sojourner–Douglass College, Inc. for petitioner, amicus curiae.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, BATTAGLIA, GREENE and JOHN C. ELDRIDGE, (Retired, specially assigned), JJ.

ELDRIDGE, J.

This case concerns the interpretation of a restrictive covenant which states that a six-acre parcel of land in Anne Arundel County "shall be undeveloped, except for educational facilities in conjunction with the Anne Arundel County Board of Education." The disputed issue is whether the quoted

language means that the Board of Education was required to have been involved in the planning, design or construction of the educational facilities, or, on the other hand, whether the Board's involvement in the use of the educational facilities is sufficient to permit such facilities under the covenant.

## I.

The parcel of land which is the subject of this dispute is approximately six acres, located in the south east quadrant of the intersection of Maryland Route 2 and Maryland Route 214 in the Edgewater area of Anne Arundel County. The parcel had been part of a 1390–acre tract of land which a developer, Rose of Annapolis Limited Partnership, intended to develop "as a mixed-use community known as South River Colony."

In 1988, the developer Rose of Annapolis entered into a "Development Agreement and Declaration of Covenants, Conditions and Restrictions" with each of several community associations representing "citizens who reside in the general vicinity of the Property." The respondent London Towne Property Owners Association, Inc., was one of these associations entering a Development Agreement and Declaration of Covenants, Conditions and Restrictions with the developer. Under a heading entitled "Dwelling Units and Land Use," the Agreement provided, *inter alia,* as follows (emphasis added):

"c. The portion of the Property consisting of approximately six (6) acres and being located in the southeast quadrant of the Maryland Route 214/Maryland Route 2 intersection *shall be undeveloped, except for educational facilities in conjunction with the Anne Arundel County Board of Education.*" [1]

---

**1.** The Anne Arundel County Board of Education consists of seven members appointed by the Governor plus a student member, and the Board is the head of the Anne Arundel County Public School System. The Superintendent of Schools for Anne Arundel County is appointed by the Board, is the "executive officer, secretary, and treasurer of the county board," is responsible for "[t]he proper administration of the County School System," and must in writing approve all contracts made by the County School System. *See* Maryland Code (1978, 2006

In June 2002, the subject six-acre parcel of land was sold to the petitioner SDC 214, LLC (hereafter referred to as SDC), for $306,000.00. Also in June 2002, SDC entered into a lease agreement with Sojourner–Douglas College, Inc., under which SDC was to construct and lease to the College an "Educational Center" on the six-acre parcel. The lease agreement provided that the land and building "shall be used for higher education and related activities" by the College, and that the College's "use of the Premises is subject to the covenants and special exception conditions to educational uses in conjunction with Anne Arundel County Board of Education." The term of the lease was fifteen years, commencing thirty days after the educational facility was constructed, with options to extend the term beyond the fifteen years. The lease agreement also gave the College options to purchase the property either upon completion of the building or during the first five years of the initial term of the lease.[2]

The primary campus of Sojourner–Douglas College is in Baltimore City, although the College also has facilities in Anne Arundel, Prince George's, Dorchester, and Wicomico Counties. In addition, the College has a campus in the Bahamas. The College offers several four-year bachelor's degree programs and a master's degree program. The programs are primarily aimed at adult students who work during the day, and, therefore, most of the courses are given in the evening. The College's Anne Arundel County facility, located in the City of Annapolis, had become overcrowded. The purchase and lease of the subject six-acre parcel was specifically intended to alleviate this overcrowding problem.

Shortly after SDC's purchase of the six-acre parcel and the lease to the College, SDC by letter dated July 9, 2002,

---

Repl.Vol.), §§ 3–108, 3–110, 4–101, 4–102, 4–201, 4–204, 4–205(c), and 4–205(d) of the Education Article.

2. SDC is a corporation formed by, and solely owned by, Earl P. Schubert, Jr., who is a developer with an office in Annapolis, Maryland. Mr. Schubert had a prior relationship with Sojourner–Douglas College, and he owns a facility used by the College in Annapolis, Maryland.

informed the London Towne Association of the plan "to construct an educational facility for Sojourner–Douglas College on the [six-acre] site," and that "[t]he proposed use is in conjunction with and has been approved by the Anne Arundel County Board of Education." Although the President of the London Towne Association acknowledged in writing the receipt of the letter, the Association did not comment on the proposed facility.

In November and December 2002, SDC applied to Anne Arundel County for a building permit and a "Zoning Certificate of Use" with regard to the six-acre parcel and the planned educational facility. Subsequently, both applications were granted.

On September 8, 2003, the College and the Anne Arundel County Public School System entered into a contract for the parties to "work collaboratively to enhance the educational experiences of students from both institutions" and to "cooperate" with regard to several matters. The contract was signed by an official of the College and by the Anne Arundel County Superintendent of Schools.[3] Under the contract, among other things, the College agreed, both at its Annapolis campus and at the planned facility to be constructed on the six-acre parcel, to provide tutoring and other assistance for suspended or expelled public school students, to make space available at both campuses for the Public School System's "Alternate Education Programs" and "student academic intervention programs," to "provide access to textbooks and other educational materials for students in teacher training programs," and to make College facilities available to the Public School System. The Anne Arundel County Public School System, *inter alia*, agreed to "provide opportunities in its schools for [College] student teachers to get field experience," and to "select and refer [public school] students for participation in [College] educational programs."

---

**3.** *See,* Code (1978, 2006 Repl.Vol.), § 4–205(d) of the Education Article, providing that a contract made by the Public School System "is not valid without the written approval of the county superintendent."

During 2003, some opposition to the planned educational facility arose in some of the communities in the general vicinity of the proposed facility. On October 14, 2003, the London Towne Property Owners Association and John Yannone, a resident property owner in the South River Colony community, filed in the Circuit Court for Anne Arundel County a complaint for a declaratory judgment and an injunction. SDC was named as the only defendant. The complaint asserted that the proposed building and use of the six-acre parcel was prohibited by the restrictive covenant stating that the parcel "shall be undeveloped, except for educational facilities in conjunction with the Anne Arundel County Board of Education." The complaint alleged that, although the "Board of Education may utilize some of the facilities to be erected on the site," the "primary use of the Property shall be college educational programs operated by a private entity independent of the Anne Arundel County Board of Education."

After the filing of an answer and some discovery, the case was tried before the Circuit Court on May 21, 2004. An officer of the London Towne Property Owners Association and the plaintiff John Yannone testified on behalf of the plaintiffs. Dr. Charlestein Fairley, an official of the College, and Earl P. Schubert, Jr., the owner of SDC, testified on behalf of the defendant, and numerous exhibits were introduced into evidence.

The only testimony directly relating to the relationship between the College and the Anne Arundel County Public School System was by Dr. Fairley, the Director of the College's Anne Arundel County facilities. After pointing out that the College located in Anne Arundel County in 1993, and after describing the College's general nature and programs, Dr. Fairley testified as follows:

"Q. * * * What relationship or is there an existing relationship with the Anne Arundel County public school systems between the college—or a relationship between the college and the school system?

"A. Yes. There is both a formal and informal relationship. We, from the very beginning in 1993, established a relationship in conjunction with the Board of Education. Our early childhood education majors do their practice teaching in the Anne Arundel County public schools. The Anne Arundel public schoolteachers serve as cooperating or mentoring teachers. We have a person on staff currently, Dr. Eleanor Harris, who is a retired Anne Arundel County administrator and principal, who supervises this process.

"We also collaborate with the Board of Education on proposal development. We serve as a resource for them, and they for us. We've opened our facility to the Board of Education to be used. They have come over and examined and looked at the kind of facilities that we have. Because we hold classes from 6:00 until 10:00 in the evening, our classroom space is open. So, we've made that available to them.

"We also provide speakers for them, when requested. We provide resources, and they to us.

"Q. All right.

"A. Some of it—well, many of the teachers teach in our general education program. And we've also provided help to some of their staff without college degrees obtain a college degree."

\* \* \*

"Q. Dr. Fairley, with regard to student teaching, is that a formalized program?

"A. Yes. Yes, it is a formalized program. It is—we have a manual. We have job descriptions for the cooperating teachers. We have job descriptions for our supervising teacher. We have goals and objectives that students are to attain during this process. It's all spelled out. We pay a small fee to the cooperating teacher for having our students in the classroom."

\* \* \*

"Q. \* \* \* Now there are employees of the public school system who are seeking advanced degrees or seeking degrees through your program. Is that correct?

"A. Yes. We've always had them, yes.

"Q. And are there members of the public school staff who teach at Sojourner Douglas?

"A. Yes.

"Q. Now prior to entering into this lease, did you make an attempt to formalize a relationship with the county public school system?

"A. Yes, we did. We worked out a memorandum of understanding, which took under consideration the activities that we were engaged in together."

Dr. Fairley went on to point out that the provision of services and facilities to the Anne Arundel County Public School System, at the six-acre Edgewater location, would commence "[w]hen the new building is constructed."

Thereafter, the Circuit Court filed an order denying the plaintiffs' request for injunctive relief and filed a written declaratory judgment. The Circuit Court held that there was no violation of the restrictive covenant, as the proposed building constituted an educational facility and that it was "in conjunction with the Anne Arundel County Board of Education." The Circuit Court stated:

"Based on Dr. Fairley's testimony, it is undoubtedly clear that the College and the Board of Education have a long-standing relationship of working together to educate individuals in Anne Arundel County. In light of their relationship, this Court concludes that the College has been working 'in conjunction with' the Board of Education, as that phrase is used in Section 1(A)(i)(C) of South River Colony's Declaration of Covenants, in the establishment of its new educational facility upon the South River Colony Property. Therefore, this Court concludes that the Defendant's proposed use of the South River Colony Property does conform with South River Colony's Declaration of Covenants."

The plaintiffs noted an appeal to the Court of Special Appeals. They also requested the Circuit Court to issue a temporary injunction so that construction of the facility on the six-acre parcel would not commence pending appellate proceedings. The Circuit Court denied the request for an injunction pending appeal. The plaintiffs neither challenged this denial in the Court of Special Appeals nor sought from the appellate court an injunction pending appeal. Consequently, construction of the facility began, and the parties have informed us that construction has been completed, that the facility is being used by the College, and that a public charter school, chartered and funded by the Anne Arundel County Board of Education, is located in the building. *See* Maryland Code (1978, 2006 Repl.Vol.), §§ 9–101 through 9–110 of the Education Article, relating to the "Maryland Public Charter School Program."[4]

The Court of Special Appeals, in an unreported opinion, reversed the judgment of the Circuit Court and remanded the case to the Circuit Court "for the entry of orders consistent with this [the Court of Special Appeals'] opinion."[5] Although

---

**4.** The parties have also informed us that the individual plaintiff, John Yannone, who had been a resident of the Smith River Colony community, has sold his home and has moved away from the area. Accordingly, the only plaintiff with standing to continue the challenge to the development of the six-acre parcel appears to be the London Towne Property Owners Association which was a party to the 1988 Agreement. In addition, we have been informed that the College has given SDC notice that the College will exercise its option to purchase the property.

**5.** The initial judgment of the Court of Special Appeals simply provided that the Circuit Court's judgment was "reversed." The plaintiffs then filed in the Court of Special Appeals a "Motion for Clarification and/or Reconsideration," requesting that the appellate court's judgment be modified to provide, *inter alia*, that the Circuit Court be required to order the removal of the building and the restoration of the property "to its undeveloped condition." The Court of Special Appeals declined to make this requested modification but did, on "the Court's own motion," amend its judgment by adding the language providing for Circuit Court Orders consistent with the appellate court's opinion.

Since construction has been completed and the building is being used by both the College and the Public School System, including the public

acknowledging that both Dr. Fairley's testimony and the September 2003 contract between the College and the Anne Arundel County Public School System "describe[ ] a general working relationship between the College and the Board [of Education]," the Court of Special Appeals determined that this relationship was not "sufficient to bring the proposed South River [Colony] development within the use permitted by the covenant." The intermediate appellate court was of the view that, to satisfy the condition in the restrictive covenant, the Anne Arundel County Board of Education was required to have been involved in the planning, design or construction of the physical facilities. The appellate court thus noted that the September 2003 contract between the College and the Board of Education "is clearly directed at the development and maintenance of worthwhile educational programs, not at the development of physical facilities." In its conclusion, the Court of Special Appeals emphasized "that the Board [of Education] took no part in the site plan or layout of the property. . . ."

SDC filed a petition for a writ of certiorari which this Court granted. *SDC v. London Towne*, 390 Md. 90, 887 A.2d 655 (2005). The respondents did not file a cross-petition for a writ of certiorari.

## II.

Several recent opinions of this Court have discussed the principles controlling the interpretation and application of restrictive covenants. *See, e.g., Lowden v. Bosley*, 395 Md. 58, 909 A.2d 261, 2006 WL 2946064 (2006); *Miller v. Bay City Property Owners Association*, 393 Md. 620, 903 A.2d 938 (2006); *Roper v. Camuso*, 376 Md. 240, 829 A.2d 589 (2003); *Stansbury v. Jones*, 372 Md. 172, 202–203, 812 A.2d 312, 330 (2002); *County Commissioners v. St. Charles*, 366 Md. 426, 784 A.2d 545 (2001); *Belleview v. Rugby Hall*, 321 Md. 152, 157, 582 A.2d 493, 495 (1990).

---

charter school, it is not clear what type of further orders were contemplated by the Court of Special Appeals.

Where the language of the instrument containing a restrictive covenant is unambiguous, a court should simply give effect to that language "unless prevented from doing so by public policy or some established principle of law." *Miller v. Bay City Property Owners Association, supra,* 393 Md. at 637, 903 A.2d at 948 (internal quotation marks omitted). If, however, the language of the instrument is ambiguous, current Maryland law requires a court to apply "a reasonably strict construction when construing covenants." *County Commissioners v. St. Charles, supra,* 366 Md. at 447, 784 A.2d at 557. The "reasonably strict construction" rule has been explained as follows (*Belleview v. Rugby Hall, supra,* 321 Md. at 157–158, 582 A.2d at 495):

> "If the meaning of the instrument is not clear from its terms, 'the circumstances surrounding the execution of the instrument should be considered in arriving at the intention of the parties, and the apparent meaning and object of their stipulations should be gathered from all possible sources.'
>
> * * *
>
> "If an ambiguity is present, and if that ambiguity is not clearly resolved by resort to extrinsic evidence, the general rule in favor of the unrestricted use of property will prevail and the ambiguity in a restriction will be resolved against the party seeking its enforcement."

Moreover, like contractual provisions generally, restrictive covenants should be interpreted reasonably and should not be given interpretations leading to unreasonable results. *Miller v. Bay City Property Owners Association, supra,* 393 Md. at 636, 903 A.2d at 947 (pointing out that restrictive covenants are now interpreted under a " 'reasonableness rule' "); *County Commissioners v. St. Charles, supra,* 366 Md. at 447, 784 A.2d at 557 (same); *Martin v. Weinberg,* 205 Md. 519, 527, 109 A.2d 576, 579 (1954) (restrictive covenants should be given "a fair and reasonable construction"). *See also, e.g., Fister v. Allstate,* 366 Md. 201, 219, 783 A.2d 194, 205 (2001) (Courts "avoid interpreting contract language . . . in a manner that is void of a commonsensical

perspective"); *Forbes v. Harleysville Mutual,* 322 Md. 689, 704–705, 589 A.2d 944, 951 (1991) (One party's interpretation of a contract "would be a particularly unreasonable construction" leading to results inconsistent with public policy); *Canaras v. Lift Truck Services,* 272 Md. 337, 357, 322 A.2d 866, 877 (1974) ("An interpretation which makes a contract fair and reasonable will be preferred to one which leads to either a harsh or unreasonable result").

In the present case, neither side has taken the position that the restrictive covenant is ambiguous. Furthermore, neither side at the trial before the Circuit Court presented any extrinsic evidence relating to the intent underlying the restrictive covenant when the original developer and the community associations entered into the 1988 agreements.

SDC contends that the September 2003 contract between the College and the Anne Arundel County Board of Education, as well as the present use of the educational facility by the Board of Education, "clearly" satisfies the "except" clause in the restrictive covenant, and that nothing more is required by the language "in conjunction with the Anne Arundel County Board of Education." (Petitioner's brief at 10). SDC argues that the Court of Special Appeals, by "focusing on the planning and construction of the proposed facility," has inserted words into and has rewritten the restrictive covenant. (*Ibid.*). SDC points out that, under the Court of Special Appeals' construction of the covenant, "the Board of Education would be prohibited from using the property as a public school facility, even in a case where the Board had purchased the property and occupied and used it exclusively." (*Id.* at 11). Although arguing that the restrictive covenant is clear, SDC alternatively submits that, if the covenant were ambiguous, SDC should nevertheless prevail under the "reasonably strict construction" principle because no extrinsic evidence regarding the intent of the covenant was presented at trial.

The London Towne Property Owners Association, relying on the word "Development" in the title of the 1988 Agreement, and the phrase "shall be undeveloped" in the restrictive

covenant, argues that the "except" clause in the covenant must be interpreted to mean "unless the owner, in conjunction with the Anne Arundel County Board of Education, *developed* educational facilities." (Respondents' brief at 11–12, emphasis added). The words "development" or "develop," according to the London Towne Association, mean " 'the act of converting a tract of land into an area suitable for residential or business uses' " or " 'the conversion of raw land into an area suitable for residential or business uses.' " (*Ibid.*, quoting selective dictionary definitions). The London Towne Association maintains that, since the Board of Education played no role in planning and design discussions for the physical facility or the construction of the facility, the Court of Special Appeals correctly held that there was no compliance with the restrictive covenant. (*Id.* at 14).

We agree with SDC's argument. The plain language of the restrictive covenant does not require that the Anne Arundel County Board of Education must have been involved in the planning, design or construction of the building. The agreement to use the educational facility, or after construction the actual use of the facility, in conjunction with the Board of Education, fully satisfies the clause in the restrictive covenant setting forth the exception. The trial court's findings of fact, that the educational facility was "in conjunction with" the Board of Education, are well-supported by the evidence.

In the context of the restrictive covenant in the 1988 Agreement, the general requirement that the six-acre parcel be "undeveloped" simply indicates that there should be no structures such as residences, commercial buildings, other buildings, etc., on the parcel. The exception is for an educational facility "in conjunction with" the Board of Education. The presence of an educational facility on the parcel falls within this exception as long as there is involvement by the Board of Education, regardless of whether the facility was "planned" in conjunction with the Board of Education, or "designed" in conjunction with the Board, or "constructed" in conjunction with the Board, or to be "used" in conjunction with the Board. Under the language of the covenant, an

educational facility used by both the College and the Anne Arundel County Public School System is an "educational facilit[y] in conjunction with the Anne Arundel County Board of Education."

■ The London Towne Association and the Court of Special Appeals would insert in the "except" clause of the restrictive covenant the word "developed," and they would define the word "developed" to mean the planning, design or construction of the building. Nevertheless, "it is not the province of this Court to supply a missing" word or phrase in a restrictive covenant, *Sowers v. Holy Nativity Church*, 149 Md. 434, 442, 131 A. 785, 788 (1926). *See also Markey v. Wolf*, 92 Md.App. 137, 152, 607 A.2d 82, 90 (1992). Moreover, there is no more reason to insert the narrowly defined word "developed" in the restrictive covenant's clause than there is to insert the word "used." In fact, the heading of that section of the 1988 Agreement, which includes the restrictive covenant, contains the words "Land Use" but does not contain the word "develop."

In addition, even if the word "developed" were inserted into the key language of the restrictive covenant, there is no good reason for confining its meaning to the planning, design or construction of the physical facility. A perusal of dictionary definitions discloses that the term "develop" has various meanings and connotations, depending upon the context. *See, e.g., Webster's Third New International Dictionary, Unabridged*, at 618 (1981). The Court of Special Appeals at one point in its opinion seemed to recognize this when it stated that the September 2003 contract between the College and the Board of Education "is clearly directed at the *development* and maintenance of worthwhile educational programs, not at the *development* of physical facilities." (Emphasis added). If the restrictive covenant had said "educational facilities *developed* in conjunction with the" Board of Education, the language could reasonably have referred to various educational programs. An "educational facility" is more than simply bricks, mortar, and the other physical attributes of a building.

Furthermore, as pointed out by SDC, the interpretation of the restrictive covenant by the London Towne Association and the Court of Special Appeals could lead to unreasonable consequences. Suppose, for example, that upon completion of the educational facility on the six-acre parcel, the College had decided against using the facility, but the Board of Education had decided that the facility would be appropriate for and needed for a public school, and the Board had purchased the property from SDC to use as a public school. Under the Association's and the Court of Special Appeals' interpretation, the Board of Education's use of the property for a public school would violate the restrictive covenant because the Board had not been involved in the planning design, or construction of the physical facility.[6] Also, if the London Towne Association's request to demolish the existing facility were granted by the Circuit Court, SDC could re-build on the six-acre parcel the identical facility for use by the College, as long as SDC consulted with the Board of Education with respect to the planning, design, and construction of the new facility. Such an interpretation of the covenant does not comport with common sense.

It is undisputed that the facility on the six-acre parcel is an "educational" facility. It is also undisputed that, pursuant to contract, the Anne Arundel County Board of Education has agreed to use the facility and is in fact using the facility. Consequently, the facility complies with the requirement that it shall be "in conjunction with the Anne Arundel County Board of Education."

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE*

---

6. It may be noteworthy that the six-acre parcel is adjacent to property containing several public school facilities controlled by the Anne Arundel County Board of Education.