## KESELING ET UX. *v.* MAYOR AND CITY COUNCIL OF BALTIMORE

[No. 248, September Term, 1958.]

264

*Decided June 10, 1959.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*J. Calvin Carney,* for appellants.

*James S. Sfekas, Assistant City Solicitor,* with whom were
*Hugo A. Ricciuti, City Solicitor,* and *F. Clifford Hane,
Deputy City Solicitor,* on the brief, for appellees.

HAMMOND, J., delivered the opinion of the Court.

Householders appeal from refusal of the zoning authorities
of Baltimore to allow them to use their residentially zoned
property for seven roomers in addition to four apartments and
a real estate office. Since 1921 the appellants, Mr. and Mrs.
George Keseling, have owned and occupied a three-story and
basement frame house in a Residential Use, E Area District.
At first they used the entire house as their residence, at the
same time conducting a real estate business from an office in
one of its rooms. When the original Baltimore City zoning
ordinance was enacted in 1931, the house had been converted
into four apartments. The appellants then were living in one
of the apartments and operating their real estate business from
the office. The remaining three apartments were rented to
other families. Later, after their children had married and
moved out, Mr. and Mrs. Keseling split their apartment into
two, and converted the basement into two more, so that the
property then contained seven apartments and the real estate
office. In 1948, the Board of Municipal and Zoning Appeals
ruled that the Keselings could continue to use the house for
four apartments and the real estate office, as non-conforming
uses, but that they could not maintain the three additional
apartments. After this ruling, the Keselings converted the
three apartments into seven separate non-housekeeping rooms.

In 1958, as a result of the newly enacted Multiple Dwelling
and Housing Law, Baltimore City Ordinances (1957-1958)
—No. 1077, the Keselings were required to apply to the
Building Inspection Engineer for a certificate of occupancy
that would permit them to continue to use their property for
four apartments, the real estate office, and seven roomers in
seven rooms, none of which had housekeeping or cooking fa-
cilities. The Zoning Enforcement Officer disapproved the ap-
plication because, under Sections 9, 10 and 11 of the Baltimore
City Zoning Ordinance (1958 Ed.), the renting of the seven
rooms constituted a commercial use (the zoning division, as

a rule of thumb, says that in a residential area there is a commercial use, which is forbidden, if there are five or more roomers, and an accessory use, which is permitted, if the roomers number four or fewer). Later, the Zoning Enforcement Officer wrote the Board that the application also should be disapproved as being in violation of the density restrictions of the zoning ordinance.

The Board ruled that "the authorized use of the property now exceeds that permitted under the population density regulations" and disapproved the application. On appeal to the Baltimore City Court, Judge Tucker affirmed the Board, finding that it properly had applied the controlling law to the facts. Judge Tucker noted that the square footage of the lot involved would have permitted occupancy by only three families, but that by reason of the non-conforming use, it could be occupied by four families, and held that since the maximum number of families were occupying the house, additional persons, not members of the family, could not live there.

The lower court may have been right in his view expressed in the words of an earlier opinion in that Court, as follows:

The purpose of the density of population provisions of the ordinance would be completely thwarted and rendered futile" if they were construed to mean that, in addition to the maximum number of families who can occupy a building, other persons not members of the families may also be occupants. The difficulty is that the ordinance does not say this. Section 48(v) defines "family" as "A person living alone, or two or more persons living together as a housekeeping unit, with separate identity from other persons or groups in the same structure, having cooking facilities as a part of the area designated for his or their use." Section 24 says: "* * * the maximum number of families per acre that may be housed on a lot, shall be as set forth in the following table: * * *.", and Section 25 provides that "Section 24, including the table, shall be subject to the following regulations: A. The maximum number of families which may be housed on any lot shall not exceed the nearest integral number obtained by multiplying the acreage of such lot by the number of families per acre permitted in the area district where such lot is situated, * * *." Section 25 further

provides in paragraph B that, in addition to the family per acre requirements of Sections 24 and 25A, no building may be used "for dwelling purposes or additional family units or apartments unless at least 420 square feet of usable, contiguous floor space in such building is provided for each family housed therein. * * *." It is apparent that the restrictions of the law are expressed in the measurement of family units. In *Aaron v. City of Baltimore,* 207 Md. 401, 407, this Court noted that in the case of *Suwalski v. Mayor and City Council* (Circuit Court No. 2 of Baltimore City, 1948) Judge Sherbow had adopted the definitions of "family" in *Black's Law Dictionary* and in *Webster's New International Dictionary,* and that he had said that in determining a family, "the real test is whether they constitute a separate household maintaining separate housekeeping facilities" (which is now the statutory definition), and that he had concluded "that if one takes in roomers or boarders, who do not have separate housekeeping facilities, such roomers or boarders do not constitute a 'family'." The definitions which Judge Sherbow quoted recognize that in a collective body of persons who live in one house, under one head or management, lodgers or boarders may be included as a part. As we read the ordinance it does not in terms, or by reasonably necessary implication, test the density of occupancy by other than the measure of the family, and does not direct that roomers are to be counted in testing density. See Bassett, *Zoning,* (1940 Ed.), p. 86. Compare *Couch v. Southampton Civic Club* (Tex.), 313 S. W. 2d 360 (restrictive covenant against "multiple housing" did not bar roomers); *Hall v. Leonard,* 23 N. Y. S. 2d 360, 363; *Neptune Park Ass'n v. Steinberg* (Conn.), 84 A. 2d 687; *Robertson v. Western Baptist Hospital* (Ky.), 267 S. W. 2d 395; *Missionaries, Etc. v. Village of Whitefish Bay* (Wis.), 66 N. W. 2d 627.

Although we find the reasons given by the Board and the trial court for their action to have been wrong, we conclude that the denial of the appellants' application was correct. There is no dispute as to the facts of the case which were adduced by the appellants, and we think that they show that the Board and the court should have followed the recommendation of the Zoning Enforcement Officer that the application be denied as

in violation of the prohibition against a business in a Residential Use District spelled out by Sections 9, 10 and 11 of the Ordinance. Section 9 prohibits business uses in a Residential and Office Use District, except that office buildings may be maintained and used there under specified conditions. Section 10 prohibits in Residential Use Districts (the area in which the Keseling property is) all uses of land or buildings excluded from Residence and Office Use Districts, and business and professional offices as well. Section 11 allows use of land and buildings "which are customarily incident to uses not excluded from Residential Use Districts", stating that such uses "shall be permitted as accessory uses" in such districts.

The leading zoning case on whether the renting of rooms or the taking of boarders is accessory or incidental to the main use of the property, or is itself the main use, with residence incidental, would seem to be *Baddour v. City of Long Beach* (N. Y.), 18 N. E. 2d 18, 21 (appeal dismissed for want of a substantial federal question, 308 U. S. 503). There the property was located in a residential district restricted to one-family detached houses with one housekeeping unit only with "accessory uses customarily incident to any use permitted by the provisions of this section." The Court concluded the city had power to exclude from the area any business use of property, and said: "There is nothing in the ordinance that specifically, in words, prohibits the use of the property for the keeping of roomers and boarders. But there is nothing vague or indefinite in its purpose or meaning. It prohibits the use of the property for business purposes. Construed in the light of its history, it excludes the use of the property for a boarding or rooming house." In delineating the line between an accessory use and use for a business, the Court said: "The fact that the property may not be used for the business of keeping roomers and boarders does not bar the occupant from occasionally taking roomers or boarders, upon special considerations, where the practice is merely incidental and accessory to the principal use of the house as a home by the family of the occupant." The opinion then referred to the fact that in *Robbins v. Bangor Ry. & Electric Co.* (Me.), 62 A. 136, there is a résumé of decisions as to the difference between a "family" use and a

boarding house, and adopted the language of that case as follows: " 'A family living together in a house as a home is none the less a family, because incidentally there are boarders in the same house, and perchance eating at the same table. But a boarding house is none the less a boarding house, when used as such, because the boarding house keeper and his wife and children live in it while the business of keeping a boarding house is being carried on. * * * The test is whether the petitioner's tenant occupied the house as a home for himself and his wife and children, and incidentally kept boarders also, or whether he occupied it as a place for carrying on the business of keeping boarders, although while prosecuting the business, and as a means of prosecuting the business, he and his wife and children live in the house also.' " 2 Yokley, *Zoning Law and Practice,* (2nd Ed.), Sec. 219, says: "The occasional taking of boarders and roomers as an accessory use is, therefore, permitted, but where the use is extended so that it becomes the principal use and thereby becomes a business, the taking of roomers and boarders is properly excluded from a residence district." See also *Kansas City v. Wilhoit* (Mo.), 237 S. W. 2d 919, where the ordinance set the line at whether the number of boarders was more than four; and *City of Gulfport v. Daniels* (Miss.), 97 So. 2d 218, where the ordinance limited the number of roomers as an accessory use to six. There are many cases, involving restrictive covenants against the use of the property for business, which use the same reasoning and reach the same result as the *Baddour* case.[1]

In the case before us, we think it evident that the business tail is wagging the residential dog. The Keselings subdivided their own apartment so as to rent out half of it after their children moved out and constructed two more apartments in the basement. When they were forced by the authorities to discontinue the renting of the three new apartments, they con-

---

1. A number of such cases are collected in an annotation in 124 A. L. R. 1011; see also *Andrews v. Metropolitan Bldg. Co.* (Mo.), 163 S. W. 2d 1024; *Deitrick v. Leadbetter* (Va.), 8 S. E. 2d 276; *Carr v. Trivett* (Tenn.), 143 S. W. 2d 900; *Rosenblatt v. Levin* (Ct. Ch. N. J.), 12 A. 2d 627, 629; *Trainor v. Le Beck* (N. J.), 139 A. 16, 17; *Mayer v. Livingston,* 172 N. Y. S. 2d 45.

verted them into rooms which they felt could be legally rented. The house is used for four families and seven other individuals and a business office. The business office itself would be excluded from the use district except for the fact that it is a non-conforming use. The appellants occupy as a residence only one of the eleven dwelling units. There can be no real doubt that the Keselings are not renting the seven rooms as an incident of or as accessory to their use of the property as a home, but rather are occupying the property as a place for the carrying on of the business of renting apartments and rooms. The principal use of the building clearly would seem to be the renting of dwelling quarters to others. This use, to the extent that it is not protected as non-conforming, is in conflict with the restrictions of Sections 9, 10 and 11 of the Baltimore City Zoning Ordinance (1958 Ed.) ; and, therefore, petitioners had no right to have their application granted.

*Order affirmed, with costs.*