909 A.2d 261

James LOWDEN, et ux.

v.

Daniel B. BOSLEY, et al.

No. 78, Sept. Term, 2005.

Court of Appeals of Maryland.

Oct. 17, 2006.

Robert A. Gaumont, Brett Ingerman (DLA Piper Rudnick Gray Cary, Baltimore, on brief), for appellants.

Jeffrey S. Getty (Geppert, McMullen, Paye & Getty, Cumberland, on brief), for appellees.

Argued before BELL, C.J., WILNER, CATHELL, HARRELL, BATTAGLIA, GREENE and JOHN C. ELDRIDGE, (Retired, Specially Assigned), JJ.

ELDRIDGE, J.

The issue in this case is whether a restrictive covenant, which requires that building lots within a 59-lot subdivision along Deep Creek Lake in Garrett County, Maryland, be used for "single family residential purposes only," prohibits the owners of homes on those lots from renting their homes to residential tenants on a short-term basis. We shall hold that the restrictive covenant is unambiguous and that it does not prohibit the short-term rental to a single family of a home.

## I.

The plaintiffs-appellants, James and Angela Lowden, in September 2003, purchased lots 11 and 11A in the Stilwater subdivision along Deep Creek Lake in order to build a vacation home. That same month, four other lots in the Stilwater Subdivision were purchased by the defendants-appellees, MBC–TEK Lake Properties, LLC, Daniel and Angela Bosley, and James and Deborah Cline. The following April, the defendants-appellees Rick and Jill Dansey acquired two lots. All of these defendants-appellees subsequently built large homes on their lots, and several of their homes are available to vacationers as short-term residential rental properties.

The Stilwater subdivision was originally part of a larger tract of land owned by New Glen Properties, LLC, which had subdivided and sold various waterfront and water access lots during 2003 and 2004. All lots were subject to restrictive covenants recorded in June 2003 by New Glen in a Declaration of Covenants, Conditions and Restrictions. That Declaration

stated that the purpose of the subdivision was to "develop or cause to be developed on the Property a residential community. . . ." The Declaration contains a provision entitled "uses" which restricted the use of the property. Section 8.1 of the Declaration states as follows (emphasis added):

> "*Uses.* All lots shall be used for *single family residential purposes only.* No structure of a temporary character whether a basement, tent, shack, trailer, camper, or other out-building will be placed on any Lot at any time as a permanent or temporary residence."

Article 8 of the Declaration also contains provisions restricting the subdivision of lots, the posting, storage, and keeping of certain items on the property, and the necessity of the Architectural Committee's approval before a home could be built and for various other activities concerning the property. Additionally, § 2.7 of the Declaration, entitled "Delegation of Use," states as follows (emphasis added):

> "*Delegation of Use.* Any Owner may delegate, in accordance with the Bylaws, his right of enjoyment to Common Areas and facilities to members of his family, his *tenants* or contract purchasers who resides on a Lot."

The Lowdens, in May 2004, after learning that the individual defendants intended to offer their homes as short-term vacation rentals or sell them to others who would offer the homes as short-term rentals, instituted the present action by filing in the Circuit Court for Garrett County a complaint for injunctive relief, damages and a declaratory judgment. The Lowdens named as defendants New Glen, MBC–TEK Lake Properties, the Bosleys, the Clines, the Danseys, the Garrett County Board of County Commissioners and the county planning and zoning agency. The Lowdens' principal contention was that § 8.1 of the Declaration prohibited the rental of the homes on a short-term basis because such use was contrary to a "single family residential purpose." The Lowdens further claimed that New Glen and the defendant lot owners were prohibited from renting their properties under new zoning provisions applicable to the Deep Creek Lake Watershed area and that seeking an exception under the new regulations

would breach § 8.1 of the covenant.[1] The count against the County Commissioners and the county zoning authorities was based upon the contention that certain provisions of the Garrett County zoning laws were unconstitutional. The Lowdens subsequently dismissed their claim against the County Commissioners and the local zoning agency, thereby abandoning the argument that certain provisions of the county zoning laws were unconstitutional.

The defendants MBC–TEK Lake Properties, the Bosleys and the Clines, built on their lots homes containing eight bedrooms, and the Danseys built a home containing seven bedrooms. These defendants then entered into rental agreements with Railey Mountain Lake Vacations, LLC, turning over control of rental rates, management, and maintenance to Railey. Railey offers these homes for rent as single rental units. Although the rental agreements do not expressly prohibit unrelated people from renting a home together, there is no evidence that any home was rented or offered for rental on

---

1. The new zoning regulations were adopted in August 2003 when Garrett County redefined and regulated homes which qualified as "transient vacation rental units" (TVRU). The zoning law defined a TVRU as follows:

   "A building offering complete living facilities for one single family under one roof provided that a maximum of 8 bedrooms and a maximum over night occupancy of two persons per bedroom plus four additional persons will be permitted on the property and that the living facilities are rented on the basis of a 14–day period or less to guests. All living facilities must be incorporated into the principal structure and no living quarters may be installed in accessory buildings."

   The new zoning regulations defined "single family detached dwelling" as a "building commonly known as a single-family house designed for and occupied exclusively as a residence having one dwelling unit from ground to roof and open spaces on all sides. . . ." The regulations further defined a "dwelling unit" as a "dwelling or portion thereof providing complete living facilities for one family," and excluded "rooming, boarding or lodging houses or hotels, motels, tourist homes or other similar places offering overnight accommodations for transients." In the Lake Residential District, where the Stilwater Subdivision is located, the new zoning regulations allowed TVRU's containing up to five bedrooms "by right" and allowed the owner of homes containing six to eight bedrooms to apply for a special exemption in order to qualify as a TVRU.

a room-to-room basis or to different families. The advertisements state a rental price for an entire home.

After answers to the complaint were filed, the defendants filed motions for summary judgment and thereafter the plaintiffs filed a cross-motion for summary judgment. Both sides argued that the restrictive covenant in § 8.1 of the Declaration was "clear and unambiguous," although they obviously differed as to the meaning of the language "single family residential purposes" contained in the covenant.

The defendants argued that the phrase "single family residential purposes" basically meant that only single family homes could be constructed on the lots, and that commercial buildings or motels could not be built on the lots. The defendants also argued that, to the extent the phrase referred to the use of a constructed single family home, it "merely limit[ed] the use of the property to living purposes as distinguished from business or commercial purposes." The defendants continued:

> "Even if the property is rented, it continues to be *used* for residential purposes in compliance with the Declarations. That a single-family residence is rented as a vacation rental unit does not change *character* of the improvement or its *use* for residential purposes. There still is no commercial enterprise being conducted on any part of the property."

With regard to the plaintiffs' contention based on the new zoning ordinance, the defendants pointed out that the Declaration of Covenants, Conditions and Restrictions was "recorded among the Land Records of Garrett County" prior to the enactment of the new zoning ordinance. The defendants' argument concluded:

> "It is a widespread practice for owners of single-family residences in and round Deep Creek Lake to rent them as vacation rentals. If a prohibition against such rentals actually had been contemplated or intended, it would have been (and should have been) stated clearly in the Declarations. However, such a prohibition appears neither in § 8.01 nor in any other section of the Declarations. In fact, the concept of vacation rentals is not mentioned in the Declarations."

The plaintiffs argued that the short-term rental of a home to a vacationer is "not for residential purposes, but for business or commercial purposes." They also contended that the restrictive covenant was violated because the homes "could" be rented to "unrelated individuals." The plaintiffs, however, submitted no evidence that any home had been or was then being rented to unrelated individuals.

The Circuit Court denied all motions for summary judgment, stating that "it appears there exist disputes of material fact." Thereafter, a nonjury trial was held, at which the parties presented extrinsic evidence regarding the intent underlying the "single family residential purposes" language in the Declaration of Covenants, Conditions and Restrictions.

Along with numerous other witnesses and exhibits presented at trial, the court heard the testimony of New Glen principal, Glen Adrian, who testified that his purpose in requesting the Declaration to be drafted and recorded was to ensure that the structures built upon the lots be restricted to single family homes and not townhouses, condominiums, or businesses. Mr. Adrian further testified that he had no intention of limiting the owners' rights to rent their homes on a short-term basis. New Glen's attorney, Thomas Janes, who prepared the Declaration, also testified at trial that he has prepared numerous other restrictive covenants in Garrett County using the same or similar language and that none of those restrictive covenants were intended to limit the property owner's rights to rent the properties to vacationers on a short-term basis.

Angela Lowden testified at trial as the sole witness for the plaintiffs. She testified that the Lowdens intended to purchase in a community which prohibited short-term rentals to vacationers and that she believed that the "single family residential purposes" language of the Declaration met that desire. Mrs. Lowden stated that she and her husband relied upon the advice of a Pennsylvania attorney and the plain language of the Declaration in support of this belief that such short-term rentals to vacationers were prohibited. Mrs. Low-

den further testified that she believed that a "seasonal rental" was "probably permissible" but that short-term rentals were not allowed.

Following the one day trial, the Circuit Court, relying on the extrinsic evidence and the language of the instrument, denied the plaintiffs' requests for an injunction and damages. The court filed a written declaratory judgment stating that the defendants' interpretation of the Declaration was correct and that short-term rentals to vacationers were not prohibited by the Declaration.

The Lowdens appealed to the Court of Special Appeals, and, before any proceedings in the Court of Special Appeals, this Court issued a writ of certiorari. *Lowden v. Bosley,* 389 Md. 398, 885 A.2d 823 (2005).

The Lowdens argue, on this appeal, that the trial court erred by treating § 8.1 of the Declaration as ambiguous and that the extrinsic evidence which was presented at trial was erroneously considered. The Lowdens maintain that § 8.1 of the Declaration "is short, clear, direct and unambiguous," that the restrictive covenant clearly does not "allow the short term rental use at issue in this case," and that "renting" property is a "commercial or business use" (appellants' brief at 15, 19). The Lowdens also argue that, because the rental management agreements with Railey do not expressly require that persons renting a home must be related, the "single family" portion of the restrictive covenant was violated. Alternatively, the Lowdens contend that the extrinsic evidence at trial did not support the trial court's finding with regard to the intent underlying the restrictive covenant.[2]

## II.

### A.

This Court on numerous occasions has set forth the principles governing the interpretation and application of restrictive

---

2. In this Court, the Lowdens do not make the argument that the defendants' homes are in violation of the Garrett County zoning laws.

covenants. *See, e.g., Miller v. Bay City Property Owners Ass'n,* 393 Md. 620, 903 A.2d 938 (2006); *Roper v. Camuso,* 376 Md. 240, 829 A.2d 589 (2003); *County Commissioners v. St. Charles,* 366 Md. 426, 784 A.2d 545 (2001); *Belleview v. Rugby Hall,* 321 Md. 152, 157, 582 A.2d 493, 495 (1990); *Turner v. Brocato,* 206 Md. 336, 111 A.2d 855 (1955); *Himmel v. Hendler,* 161 Md. 181, 155 A. 316 (1931); *Maryland Coal Co. v. Cumberland and Penn. RR.,* 41 Md. 343 (1875); *Thruston v. Minke,* 32 Md. 487 (1870).

As Judge Cathell for the Court recently emphasized in *Miller v. Bay City Property Owners Ass'n, supra,* where the language of an instrument containing a restrictive covenant is clear with regard to the controversy before the court, there is no occasion to consider extrinsic evidence concerning the intent reflected in the restriction. The Court in *Miller* explained (393 Md. at 637, 903 A.2d at 948, quoting *Maryland Coal Co. v. Cumberland and Penn. R. R., supra,* 41 Md. at 352):

> "In determining the intent of the parties we must begin with the actual language used in the [instrument]: 'If the intention of the parties is plainly manifest upon the face of the instrument there is no room for interpretation, and there is nothing left for the courts but to carry into effect the intention of the parties so ascertained, unless prevented from doing so by public policy or some established principle of law.'"

Moreover, a lack of ambiguity in the application of the restrictive covenant may be gleaned or reinforced by other language in the instrument. *Miller,* 393 Md. at 638, 903 A.2d at 948 ("It is also useful to look at the language used in the other sections of the . . . deed").

It is only where the restrictive covenant is ambiguous that courts venture beyond the text of the instrument and consider extrinsic evidence. *Miller,* 393 Md. at 634–637, 903 A.2d at 946–948; *County Commissioners v. St. Charles, supra,* 366 Md. at 445–448, 784 A.2d at 557. In construing ambiguous restrictive covenants, this Court at one time held

that "a strict construction standard was applicable to promote the free alienability of land," that "the courts were to hold the restriction to its narrowest limits," and that the ambiguity should be resolved in favor of the unrestricted use of the property. *St. Charles,* 366 Md. at 445–446 and n. 17, 784 A.2d at 556–557 and n. 17. More recently, however, "Maryland courts no longer apply a pure strict interpretation or construction, but apply rather, a reasonably strict construction when construing covenants." *St. Charles,* 366 Md. at 447, 784 A.2d at 557. The "reasonably strict construction" principle was explained in *Belleview v. Rugby Hall, supra,* 321 Md. at 157–158, 582 A.2d at 495:

> "If the meaning of the instrument is not clear from its terms, 'the circumstances surrounding the execution of the instrument should be considered in arriving at the intention of the parties, and the apparent meaning and object of their stipulations should be gathered from all possible sources.' "

*   *   *

■ "If an ambiguity is present, and if that ambiguity is not clearly resolved by resort to extrinsic evidence, the general rule in favor of the unrestricted use of property will prevail and the ambiguity in a restriction will be resolved against the party seeking its enforcement."

## B.

■ Although we agree with the Circuit Court's judgment, including the declaration that short-term rentals to vacationers are not prohibited, our reasoning differs somewhat from that of the Circuit Court. In our view, the Declaration of Covenants, Conditions and Restrictions, applicable to the Stilwater subdivision, on its face does not prohibit the short-term rental of a defendant's home to a single family which resides in the home. Unlike the Circuit Court, we find no ambiguity with respect to this issue. Consequently, we have no occasion to consider the extrinsic evidence relating to intent.

The crux of the Lowdens' argument is that a homeowner's use of his or her home "primarily to make money" by renting

it does not constitute a " 'residential' use," even though the tenant uses the home as a residence for a short term. (Appellants' brief at 18). The Lowdens assert that " 'residential' use" excludes "rental." (*Id.* at 19). According to the Lowdens, the defendant-homeowners are engaged in "the commercial or business use of renting." (*Ibid.*).

Section 8.1 of the Declaration of Covenants, Conditions and Restrictions provides that "lots" in the Stilwater subdivision shall be used for "residential purposes," and § 2.7 of the Declaration expressly recognizes that any owner of the lots may have "tenants." The only restrictions upon "residential" use in § 8.1 are the "single family" limitation and the prohibition against temporary structures such as tents, trailers, campers, etc. When the owner of a permanent home rents the home to a family, and that family, as tenant, resides in the home, there obviously is no violation of the Declaration. While the owner may be receiving rental income, the use of the property is unquestionably "residential." The fact that the owner receives rental income is not, in any way, inconsistent with the property being *used* as a residence. The Lowdens, by focusing entirely upon the owner's receipt of rental income, ignore the residential use by the tenant.

"Residential use," without more, has been consistently interpreted as meaning that the use of the property is for living purposes, or a dwelling, or a place of abode. *See* 43 A.L.R.4th 71, 76. The word "residential" has been applied to apartment buildings, fraternity houses, hotels, and bed-and-breakfasts, because such structures are used for habitation purposes. *See Eisenstadt v. Barron*, 252 Md. 358, 367–368, 250 A.2d 85, 90 (1969) ("There can be no question but that the apartment use ... on the adjoining land is a residential use"). *See also City of Baltimore v. Poe*, 224 Md. 428, 168 A.2d 193 (1961); *Baker v. Smith*, 242 Iowa 606, 47 N.W.2d 810 (1951); *Mullin v. Silvercreek Condominium, Owner's Assoc., Inc.*, 195 S.W.3d 484 (Mo.App.2006). The transitory or temporary nature of such use does not defeat the residential status. *See Pinehaven Planning Board v. Brooks*, 138 Idaho 826, 70 P.3d 664 (2003). What may exclude fraternity houses, hotels, motels,

boarding houses, and bed-and-breakfasts under § 8.1 of the Declaration of Covenants, Conditions and Restrictions is not the "residential purposes" language of § 8.1; instead, if they are excluded, it would be the "single family" language of § 8.1 which would accomplish such result.

The Lowdens, as well as some of the out-of-state cases on which they rely, seem to view the owner's receipt of income from a residential tenant as inconsistent with "residential" use.[3] There is no inconsistency. The owners' receipt of rental income in no way detracts from the *use* of the properties as *residences* by the tenants. There are many residential uses of property which also provide a commercial benefit to certain persons. Both in Maryland and in a great majority of other states, over 30 percent of homes are rented rather than owned by the families residing therein, thus providing much rental income to landlords.[4] In addition to conventional rentals, a commercial benefit may be realized from residential property by persons or entities holding ground rents, mortgages, or deeds of trust. When property is used for a residence, there simply is no tension between such use and a commercial benefit accruing to someone else.

In fact, not even the Lowdens argue that § 8.1 of the Declaration of Covenants, Conditions and Restrictions generally prohibits rentals to single families residing in the rented homes. The Declaration itself expressly permits delegation of

---

**3.** Many of these out-of-state cases involve the use of homes for bed-and-breakfasts, tourist houses, boarding houses, and similar uses where many unrelated persons or families rent rooms or portions of the same structure. Some of the holdings seem to be based on the "single family" restriction. *See, e.g., Fick v. Weedon*, 244 Ill.App.3d 413, 184 Ill.Dec. 335, 613 N.E.2d 362 (1993); *O'Connor v. Resort Custom Builders*, 459 Mich. 335, 591 N.W.2d 216 (1999); *Bruni v. Thacker*, 120 Or.App. 560, 853 P.2d 307 (1993); *Carr v. Trivett*, 24 Tenn.App. 308, 143 S.W.2d 900 (1940); *Deitrick v. Leadbetter*, 175 Va. 170, 8 S.E.2d 276 (1940).

**4.** *See* United States Census Bureau, Home Ownership Rates by State: 1984 to 2005; USA MapStats/Maryland, at *http://www.fedstats.gov/qf/states/2404000.html* (October 3, 2006). In Baltimore City, almost 50 per cent of families rent their homes rather than own them. *Ibid.*

certain owner rights to "tenants." Instead, the Lowdens' argument is that § 8.1 just prohibits "short-term rentals." (Appellants' brief at 13, 18). Nevertheless, there is utterly nothing in the language of the Declaration which provides any basis for drawing a distinction between long-term rentals and short-term rentals. Moreover, at what point does the rental of a home move from short-term to long-term: a week? a month? a season? three months? six months? one year? or several years?

The Lowdens' principal reliance is upon a zoning case, *Keseling v. City of Baltimore*, 220 Md. 263, 151 A.2d 726 (1959). *Keseling* involved a building in Baltimore City which was divided into several apartments, several rooms rented to individual roomers or boarders, and a real estate office. The structure was in a "Residential and Office Use District," and the applicable zoning ordinance expressly "prohibit[ed] business uses" other than an office. *Keseling*, 220 Md. at 268, 151 A.2d at 728. Because the ordinance expressly "prohibit[ed] the use of the property for business purposes," and "in the light of its [the ordinance's] history," this Court held that the renting of the individual rooms to boarders or roomers violated the business prohibition. *Keseling*, 220 Md. at 268–269, 151 A.2d at 729. The *Keseling* opinion did not hold that, in the absence of an express prohibition of business or commercial activity, the renting of rooms to boarders or roomers would not be a "residential" use.

The case at bar is clearly distinguishable from *Keseling*. In the present case, there is no prohibition of any business or commercial use or benefit. If there were such an express prohibition, our analysis would be different or the Declaration might be deemed ambiguous. Under the wording of the Declaration in this case, however, as long as a tenant's use of a home in the Stilwater subdivision is residential, a commercial benefit accruing to the landlord-owner is not prohibited. To reiterate, there is no inherent inconsistency between a residential use by a tenant and a commercial benefit for the landlord.

Other states have interpreted the term "residential" in similar contexts and have arrived at the same conclusion we reach here. *Pinehaven Planning Board v. Brooks, supra,* 138 Idaho 826, 70 P.3d 664; *Mullin v. Silvercreek Condominium Owners Assoc., supra,* 195 S.W.3d 484. In *Pinehaven,* the Supreme Court of Idaho examined whether restrictive covenants established for a planned community of single family homes prohibited the short-term rental of the homes. The covenants restricted the use of the property to residential use and, unlike the Declaration in the present case, did prohibit commercial or business ventures or uses. The Supreme Court of Idaho held that, "as a matter of law, the Covenants are unambiguous and clearly allow the rental of residential property for profit." *Pinehaven,* 138 Idaho at 829, 70 P.3d at 667. In construing the covenants, the Idaho Supreme Court stated (138 Idaho at 830, 70 P.3d at 668):

> "Renting the property for residential purposes, whether short or long-term, does not fit within these prohibitions. The only building on the Brooks' property remains a single-family dwelling and renting this dwelling to people who use it for the purposes of eating, sleeping, and other residential purposes does not violate the prohibition on commercial and business activity as such terms are commonly understood."
>
> \*     \*     \*
>
> "[T]he rental of residential property for residential purposes is more appropriately deemed residential as opposed to business use. Thus, the Covenants do not prohibit the rental of residential property, whether such rental is short or long term."

The court in *Pinehaven, supra,* went on to point out that the cases from some other jurisdictions, which have defined the term "residential" to restrict rentals, adopt an "exceedingly narrow definition" of the term, which the Idaho Supreme Court declined to adopt. *Ibid.*

Similarly, the Missouri Court of Appeals, in *Mullin v. Silvercreek Condominium Assoc., supra,* held that a restrictive covenant which stated: "All units and restricted common

elements shall be used, improved and devoted exclusively to residential use by a single family" did not prohibit nightly rentals of the units. 195 S.W.3d at 487–488. That court, holding that the restrictive covenant was clear and unambiguous, defined the term "residential purposes" as follows (195 S.W.3d at 490):

" '[O]ne in which people reside or dwell, or which they make homes . . . .' Stated another way, the unit owners' use of their units and restricted common elements must be for the purpose of residing or dwelling there, or in a manner making the realty a home . . . ."

## C.

The Lowdens also argue that, because there is no provision in the rental management agreements expressly stating that the tenants renting a particular home must be related, the "single family" portion of § 8.1 of the Declaration was violated. On the other hand, there is nothing in the rental management agreements stating that several separate and distinct families, or unrelated individuals, may rent a particular home at the same time. The agreements are simply silent on this issue.

Nevertheless, as previously indicated, no evidence was submitted, either in connection with the summary judgment motions or at the trial, that any home had been or was then being rented to different families or to unrelated individuals. Consequently, there was no basis for the Circuit Court to have found a violation of the "single family" provision, and the court properly declined to make such a finding. It is not an issue generated by the evidence in the case, and we have no occasion to explore the meaning or application of the "single family" restriction.

In sum, § 8.1's provision allowing a lot to "be used for single family residential purposes," particularly when coupled with the Declaration's express allowance of "tenants," plainly permits a rental to a single family residing in the home, whether the rental is for a "short" term or a "long" term. If the

framers of the Declaration had intended to prohibit rentals shorter than a certain period, they would have said so, just as they prohibited tents, trailers, campers, etc. Because the unambiguous language of the Declaration allows rentals for single family residential use, the judgment below must be affirmed.

*JUDGMENT OF THE CIRCUIT COURT FOR GARRETT COUNTY AFFIRMED. APPELLANTS TO PAY COSTS.*

Judge WILNER concurs in the judgment only.