NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Carroll
No. 2022-0098

TOWN OF CONWAY

v.

SCOTT KUDRICK

Argued: November 15, 2022
Opinion Issued: May 2, 2023

Upton & Hatfield, LLP, of Portsmouth (Russell F. Hilliard on the brief and orally), and Hastings Law Office, P.A., of Fryeburg, Maine (Jason B. Dennis on the brief), for the plaintiff.

Devine Millimet & Branch, P.A., of Manchester (Matthew R. Johnson and Solal Wanstok on the brief, and Matthew R. Johnson orally), for the defendant.

New Hampshire Municipal Association, of Concord (Stephen C. Buckley on the joint brief), and Black Lion Services, PLLC, of East Kingston (Timothy J. Corwin on the joint brief), for New Hampshire Municipal Association and New Hampshire Planners Association, as amici curiae.

Robinson & Cole LLP, of Boston, Massachusetts (Danielle Andrews Long and Timothy C. Twardowski on the brief), for New Hampshire Association of Realtors, as amicus curiae.

DONOVAN, J. The plaintiff, the Town of Conway (Town), appeals a decision of the Superior Court (Ignatius, J.) granting the motion of the defendant, Scott Kudrick, for judgment on the pleadings. The court ruled that the Conway Zoning Ordinance (2013) (hereinafter, "CZO") permits a non-owner-occupied short-term rental (STR) in the Town's residential districts because such use of a property falls within the CZO's definition of a "residential/dwelling unit." The Town argues that the court erroneously interpreted the CZO to allow non-owner-occupied STRs in residential districts. We conclude that the trial court correctly interpreted the CZO and hold that the CZO permits non-owner-occupied STRs in the Town's residential districts.

## I. Facts

The following facts are agreed upon by the parties or are otherwise supported by the record. The defendant owns several properties in the Town. He does not occupy these properties but, rather, rents them on a short-term basis for as brief a period as a single night through online platforms such as Airbnb. The defendant's properties are located in the Town's residential districts. The parties do not dispute that each property contains provisions for living, sleeping, eating, cooking, and sanitation.

In 1980, the Town adopted the CZO, which was last amended in 2013. Both parties agree that "[o]ver the years, numerous properties within the Town have been rented for holiday and vacation purposes by the owners to third parties." The Town alleges, however, that the recent proliferation of STRs, which it attributes, in part, to platforms like Airbnb, has negatively impacted residential neighborhoods where many rentals are located. To address these concerns, the Town established a committee in 2019 that recommended amendments to the CZO which were intended to address STRs. At the annual town meeting in 2021, voters rejected the proposed amendments. The Town thereafter notified the owners and operators of STRs in residential districts that, in its view, "such activity is not permitted by the CZO, and should be terminated."

In June 2021, the Town sought a declaratory judgment ruling in superior court that the CZO prohibits STRs in residential districts that are not owner-occupied. The defendant moved for judgment on the pleadings. In response, the Town filed a cross-motion for judgment on the pleadings. In November 2021, the court held a hearing and granted the defendant's motion. This appeal followed.

## II. Analysis

This appeal presents a single issue: whether the CZO permits non-owner-occupied STRs in residential districts. Resolving this issue, in turn, requires that we interpret the CZO and determine whether a non-occupying-owner's sole use of a property as a STR falls within the CZO's definition of a "residential/dwelling unit." See CZO § 190-31 (capitalization of definition terms omitted throughout opinion). The interpretation of an ordinance presents a question of law, and requires us to determine the intent of the enacting body. Working Stiff Partners v. City of Portsmouth, 172 N.H. 611, 615 (2019). We use the traditional rules of statutory construction when interpreting zoning ordinances. Id. We construe the words and phrases of an ordinance according to the common and approved usage of the language, but when the ordinance defines the terms in issue, those definitions will govern. Id. at 615-16. Furthermore, we determine the meaning of a zoning ordinance from its construction as a whole, not by construing isolated words or phrases. Id. at 616. When the language of an ordinance is plain and unambiguous, we need not look beyond the ordinance itself for further indications of legislative intent. Id.

We begin our analysis by setting forth the relevant provisions of the CZO. The CZO defines a "residential/dwelling unit" as "[a] single unit providing complete and independent living facilities for one or more persons living as a household, including provisions for living, sleeping, eating, cooking, and sanitation." CZO § 190-31 (emphasis added). Notably, the CZO does not define "living as a household" or "household." See id. The CZO also defines several other types of accommodations, including lodging houses, boardinghouses, tourist homes, and rooming houses. Id. It defines an "owner-occupied lodging house and/or owner-occupied boardinghouse" as:

> Any place consisting of a room or group of rooms located on one premises where regular, nontransient-type accommodations for sleeping or living purposes, together with meals, are offered for compensation, provided that the same is occupied and operated conjunctively by the owner, an individual person or persons, and shall not have more than four double-occupancy sleeping units.

Id. The CZO provides a similar definition for an "owner-occupied tourist home and/or owner-occupied rooming house":

3

Any place consisting of a room or a group of rooms located on one premises where transient or semi-transient accommodations for sleeping or living purposes are offered for compensation, provided that the same is occupied and operated conjunctively by the owner, an individual person or persons, and shall not have more than four double-occupancy sleeping units.

Id.

The CZO is a permissive ordinance, meaning "if a use is not identified as a permitted use or a use permitted by special exception in a zoning district, then the use is not permitted in that zoning district." CZO § 190-5. The CZO zones districts for either residential or commercial uses. CZO § 190 Attachment 2. There are four different types of residential districts, all of which permit residential units without an express owner-occupancy requirement. CZO § 190-31; CZO § 190 Attachment 2:4. In contrast, lodging houses, boardinghouses, tourist homes, and rooming houses are only permitted in residential districts if they are owner-occupied. CZO § 190 Attachment 2:2-5. As a result, a non-owner-occupied STR must satisfy the definition of "residential/dwelling unit" to be permitted in a residential zone.

Generally, the first step in determining how to apply a permissive ordinance is to look at the list of primary uses permitted in a given district established by the ordinance. Working Stiff Partners, 172 N.H. at 616. Although both parties agree with this premise, they disagree with how it affects the permissibility of STRs in residential districts. The Town argues that nothing in the CZO permits non-owner-occupied STRs in residential districts. The defendant counters that STRs fall within the definition of a "residential/dwelling unit" and are therefore permitted in residential districts. We agree with the defendant and conclude that the plain meaning of "residential/dwelling unit" as defined in the CZO includes non-owner-occupied properties used as STRs.

In its order, the trial court focused on whether the defendant's properties qualified as "residential/dwelling unit[s]" under the CZO's definition. Given that the Town did not dispute that the defendant's properties include "provisions for living, sleeping, eating, cooking, and sanitation," CZO § 190-31, the court concluded that "[t]o resolve the parties' dispute, the court must determine the meaning of the phrase 'living as a household.'" Because the CZO does not define the phrase "living as a household," the court considered dictionary definitions of the phrase and concluded that "living as a household" means "the state of living in a social unit or group of people together in the same dwelling place." Relying upon case law from other jurisdictions, the trial court further concluded that the phrase "living as a household" as used in the CZO "does not relate to who is using the property or for how long they choose to do so, but rather requires the nature of the use to be residential and not

4

commercial." Applying this definition of "living as a household," the trial court ruled that the defendant's properties fell within the CZO's definition of "residential/dwelling unit."

The trial court also addressed Working Stiff Partners v. City of Portsmouth, 172 N.H. at 614-15, where we considered a similar issue pertaining to STRs in Portsmouth. The court explained that the Portsmouth Zoning Ordinance's (PZO) definition of "dwelling unit" expressly excluded "transient occupancies" but also failed to define "transient occupancies" or "transient." See id. at 617, 620. In quoting Working Stiff Partners, the trial court noted that we looked to dictionary definitions of "transient" and concluded that the "definitions suggest that short or brief stays at the property constitute 'transient occupancies,' and further suggest that, insofar as the plaintiff is using the property for rentals as short as one day, the plaintiff is not using the property as a 'dwelling unit.'" Id. at 617 (quotations omitted). The trial court distinguished the case at hand from Working Stiff Partners because the CZO defines the term "transient accommodations" and the CZO's definition of "residential/dwelling unit" does not expressly exclude transient stays. Recognizing the divergent results between this case and Working Stiff Partners, the court acknowledged that until legislative bodies specifically address short-term rentals, "the Court will make decisions based on the language of the ordinances in effect, even if the results vary from one municipality to the next."

On appeal, given that the Town does not dispute that the defendant's properties are single units that include "provisions for living, sleeping, eating, cooking, and sanitation," we agree with the trial court that the dispute rests on whether guests of the defendant's STRs are "living as a household." See CZO § 190-31. The Town disagrees with the trial court's definition of "living as a household" and argues that the phrase "demands a level of stability in the occupancy of a residential unit that is not satisfied by merely being alive in the same place and sharing a meal." (Capitalization, bolding, and underlining omitted.) The defendant counters that "living as a household" contains no temporal requirement that would exclude STRs.

We conclude that the dictionary definitions that define "living as a household" do not clarify whether the phrase, in and of itself, demands a sense of stability or requires a durational component. The CZO defines neither the phrase "living as a household" nor the words "living" or "household." See CZO § 190-31. Accordingly, we look to the common usage of the terms to discern their meaning, using the edition of the dictionary published at the time when the ordinance was adopted for guidance. Working Stiff Partners, 172 N.H. at 617 ("When a term is not defined in a statute or ordinance, we look to its common usage, using the dictionary for guidance."). Webster's Third New International Dictionary (unabridged ed. 1976) (hereinafter, "Webster's") provides a myriad of definitions for the terms "living" and "household" — some

of which support the Town's interpretation that the phrase imparts a sense of stability, and others that support an interpretation that the phrase imposes no such requirement.  Accordingly, the meaning of the phrase "living as a household," when considered in isolation, is ambiguous with regard to whether it demands stability or a durational component.

When considering the meaning of the phrase "living as a household" within the context of the entire definition of "residential/dwelling unit," however, we conclude that the phrase refers to a group of individuals who live together under the same roof, regardless of duration.  See Working Stiff Partners, 172 N.H. at 616 ("[W]e determine the meaning of a zoning ordinance from its construction as a whole, not by construing isolated words or phrases.").  In contrast to the ordinance considered in Working Stiff Partners, the CZO's definition of "residential/dwelling unit" does not expressly exclude transient occupancies or impose any durational requirement.  See CZO § 190-31; Working Stiff Partners, 172 N.H. at 617 (stating that the PZO's definition of "dwelling unit" provides that "[t]his use shall not be deemed to include such transient occupancies as hotels, motels, rooming or boarding houses" (quotation omitted).  Therefore, we decline to read such an exclusion or requirement into the ordinance.  See Blagbrough Family Realty Trust v. A&T Forest Prods., 155 N.H. 29, 41 (2007) ("Moreover, we will not guess what the drafters of the ordinance might have intended, or add words that they did not see fit to include.").

The Town counters that this interpretation renders the phrase "living as a household" superfluous because, if "the term means nothing more than a single unit where one or more persons are alive under the same roof (with a kitchen), then there would be no reason to include the words 'living as a household.'"  We disagree.  In the CZO's definition of "residential/dwelling unit," the phrase "including provisions for living, sleeping, eating, cooking, and sanitation" modifies "complete and independent living facilities."  CZO § 190-31.  In turn, the phrase "for one or more persons living as a household" explains that the property must be used for residential purposes.  Id. (emphasis added); see Schack v. Property Owners Ass'n, 555 S.W.3d 339, 349-50 (Tex. App. 2018) (equating the word "living" in the phrase "living as a household unit" to the phrase "residential purposes").[1]  Although "provisions for living, sleeping, eating, cooking, and sanitation" describe the type of

---

[1] The Town argues that the trial court erred in relying on Schack v. Property Owners Association of Sunset Bay because the court in Schack interpreted a restrictive covenant rather than a zoning ordinance.  Such cases, however, provide guidance when interpreting certain words and phrases and determining whether STRs constitute a residential use.  See Heef Realty v. Cedarburg Bd. of Appeals, 861 N.W.2d 797, 802 (Wis. Ct. App. 2015) (relying on a case that interprets a restrictive covenant when determining whether a STR conforms to the requirements of a zoning ordinance).

6

facilities that a "residential/dwelling unit" must provide, "living as a household" describes how the property must be used.  See CZO § 190-31.[2]

The Town also contends that looking at the CZO as a whole suggests that a "residential/dwelling unit" is not intended for short-term use.  The Town points out that, in contrast to the definitions for lodging houses, boardinghouses, tourist homes, and rooming houses, which include versions of the term "transient accommodations," the definition of "residential/dwelling unit" does not include the word "transient."  See CZO § 190-31.  Therefore, argues the Town, if the legislative body intended a "residential/dwelling unit" to include transient use, it knew how to do so by using that word.

Even if we accept the Town's argument that the term "transient" as used in the CZO refers, at least in part, to duration, we reject the premise that the term's absence from the definition of "residential/dwelling unit" in effect prohibits any transient use of such property.  Instead, we conclude that the fact that some definitions include the term "transient" but others do not demonstrates that the Town knew how to include durational requirements and specifically chose not to do so for a "residential/dwelling unit."  See Barry v. Town of Amherst, 121 N.H. 335, 339 (1981) (holding that the absence of language in one statutory provision that is present in another "is a strong indication that the legislature did not intend the same result, and we will not judicially supply this omission in the absence of a legislative intent to do so").

Next, the Town argues that interpreting "residential/dwelling unit" to include STRs conflicts with the CZO's purpose.  See CZO § 190-3.  The Town posits that the CZO achieves its stated purpose by dividing the Town into residential and commercial districts and that allowing STRs in which the owner's use is primarily commercial into residential districts defeats this purpose.  As discussed above, the phrase "living as a household," CZO § 190-31, requires that the property be used for residential purposes.  It is the occupants' use of the property, however, not the owner's, that dictates how the property is being used.  See Wihbey v. Pine Orchard Ass'n Zoning Board of Appeals in Branford, NNICV206018965S, 2021 WL 5014096 at *9 (Conn. Super. Ct. Oct. 4. 2021); Santa Monica Beach Prop. Owners v. Acord, 219 So. 3d 111, 114-15 (Fla. Dist. Ct. App. 2017); Lowden v. Bosley, 909 A.2d 261, 267 (Md. 2006).  Given that the occupants of the defendant's properties exclusively engage in residential activities, permitting the defendant's STRs in residential districts does not conflict with the purpose of the CZO.  Moreover, the duration for which a property is used does not impact whether the property is used for residential purposes.  See Santa Monica Beach Prop. Owners, 219 So. 3d at

---

[2] We agree with the Town that whether a property includes a kitchen does not, in and of itself, make the property residential.  The presence of a kitchen merely demonstrates that the property includes provisions for cooking; it does not necessarily satisfy the other requirements of a "residential/dwelling unit."  See CZO § 190-31.

114-15 (concluding that the use of property as a STR did not violate a restrictive covenant's requirement that the property only be used for residential purposes, and citing numerous other cases reaching similar conclusions); Lowden, 909 A.2d at 267 ("'Residential use,' without more, has been consistently interpreted as meaning that the use of the property is for living purposes, or a dwelling, or a place of abode . . . . The transitory or temporary nature of such use does not defeat the residential status.").

Lastly, we decline to contemplate any policy considerations regarding the effect of STRs on the community when our task is to interpret the plain language of the Town's ordinance. It is the role of the legislature and municipal authorities, not the courts, to consider any policy concerns related to STRs. Currently, many municipal ordinances do not clearly address STRs, and, as the trial court recognized, until they do, we "will make decisions based on the language of the ordinances in effect, even if the results vary from one municipality to the next." See, e.g., In re Toor, 59 A.3d 722, 729-30 (Vt. 2012); Styller v. Zoning Bd. of Apps. of Lynnfield, 169 N.E.3d 160, 171 n.19 (Mass. 2021).

### III. Conclusion

For the foregoing reasons, we affirm the trial court's interpretation of the CZO and conclude that, because STRs fall within the definition of a "residential/dwelling unit," the CZO permits non-owner-occupied STRs in residential districts.

Affirmed.

HICKS, J., concurred; HANTZ MARCONI, J., with whom MACDONALD, C.J., joined, specially concurred; BASSETT, J., dissented.

HANTZ MARCONI, J., with whom MACDONALD, C.J., joins, specially concurring. We join the majority's opinion in full. We write separately to briefly address the dissent which fails to properly take into account the context in which our interpretation of "living as a household" occurs. See CZO § 190-31. We are tasked with interpreting a zoning ordinance that delimits the use that an owner can make of his or her property — a constitutionally protected right. See N.H. CONST., pt. I, art. 2. The police power to regulate land use not only curtails fundamental rights, but also imposes fines and criminal penalties for its violation. See RSA 676:17 (2016). For that reason, land use regulations require clarity to inform landowners of uses that are permitted and not permitted, just as criminal codes must adequately advise citizens of prohibited, criminalized conduct. Barton v. H.D. Riders Motorcycle Club, 131 N.H. 60, 64 (1988) (explaining that a municipal ordinance must be framed in terms

sufficiently clear that an average person after reading will understand when provisions are violated). We require no less clarity when addressing other fundamental rights. See, e.g., In re Doe, 123 N.H. 634, 641-43 (1983) (explaining that, in the context of the termination of parental rights, the statute must "not only give fair notice of what conduct is prohibited, but also provide an ascertainable standard by which it is applied to proscribe conduct"). Where, as here, there are many ways to define a household, it is imperative that we focus on the activities taking place on the land, rather than the identity of the individuals conducting them. Any ambiguity arising from language chosen for the regulation of land use should be resolved in favor of vindicating a landowner's property rights. See In re Application of Lathrop P'Ship I, 121 A.3d 630, 642-43 (Vt. 2015) (explaining that "because zoning ordinances are in derogation of private property rights, they must be construed narrowly in favor of the property owner, and any ambiguity is resolved in favor of the landowner" (quotations and citation omitted)); 1 Sara C. Bronin & Dwight H. Merriam, Rathkopf's The Law of Zoning and Planning § 5:13, at 5-30 to 5-34 (4th ed. 2017); see also Barton, 131 N.H. at 64 ("[T]he provision in question fails to meet the standard of clarity required of municipal ordinances . . . .").

The dissent also emphasizes not the use made of the property — residential, as opposed to commercial or retail — but rather the duration of that use. We, as opposed to the municipality, can no more add a durational requirement to a residential occupancy than we can to a restaurant or retail occupancy. A sandwich shop is used as a sandwich shop whether the shop is open seasonally, for a few hours a day, or for only several days a week. Similarly, a nail salon occupies space as a nail salon despite its hours of operation. Here, "living as a household" describes the type of activity in the home — personal residential activities — not the identity of the individuals or the schedule or duration of activities. See CZO § 190-31.

Lastly, the dissent disregards that this community exists in the heart of an area long used by vacationers, and has not amended its ordinance to clearly address STRs. Thus, the dissent's skepticism that the "Conway voters" in 1980 would have intended that the ordinance permit STR uses in residential zones is belied by the area's 40-year history and the record in this case. The defendant purchased his three properties in 2014 and 2018 and used them as STRs, without interference, until this recent enforcement action. On this record, it is evident that the voters of the Town were satisfied with their right to use their properties as vacation rentals.

BASSETT, J., dissenting. Because I believe that the court's interpretation of "living as a household," CZO § 190:31, is overly broad, I respectfully dissent. The phrase, "living as a household," properly construed, incorporates both a relational and durational dimension that the court fails to

9

recognize.  Accordingly, I conclude that the zoning ordinance does not permit non-owner-occupied STRs in residential districts.

In reaching its conclusion, the court consults the dictionary definitions in the 1976 edition of Webster's.  After determining that it is unclear whether, standing alone, the phrase "living as a household" "demands a sense of stability or requires a durational component," the court holds that "[w]hen considering the meaning of the phrase 'living as a household' within the context of the entire definition of 'residential/dwelling unit' . . . the phrase refers to a group of individuals who live together under the same roof, regardless of duration."  I disagree.

In so holding, the court fails to take into account the common thread running through the definitions of "household" and "live" that demands something more than the fleeting occupancy of space.  I agree with the Town that the phrase "living as a household" "is not satisfied by merely being alive in the same place and sharing a meal."  (Capitalization and emphasis omitted.)  Rather, the phrase incorporates a relational and durational component that the court's construction disregards.  Otherwise, every group of three or four persons dining together in a restaurant would be deemed to be "living as a household."  That is nonsensical.

Likewise, I agree with the Town that this court's interpretation "renders the words 'living as a household' mere surplusage."  The Town aptly observes that this "conclusion is confirmed by removing the words 'living as a household' from the definition" of "residential/dwelling unit."  The Town notes "that the resulting definition of 'residential/dwelling unit' presents no practical difference" from how the court construes the phrase.  In other words, the phrase "living as a household," as interpreted by this court, adds nothing additional to the meaning of the definition.  The court's interpretation therefore violates a fundamental rule of statutory interpretation: "[t]he legislature is not presumed to waste words or enact redundant provisions and whenever possible, every word of a statute should be given effect."  Dietz v. Town of Tuftonboro, 171 N.H. 614, 619 (2019) (quotation omitted).

My interpretation of the phrase finds ample support in the dictionary and in common usage.  See Working Stiff Partners v. City of Portsmouth, 172 N.H. 611, 617 (2019) ("When a term is not defined in a statute or ordinance, we look to its common usage, using the dictionary for guidance.").  Taken as a whole, the definitions in the 1976 edition of Webster's for "live," "household," and other related terms support the notion that a "household" requires more than mere temporary occupancy of space by a number of individuals at the same time.  The dictionary definition for "household" is "those who dwell under the same roof and compose a family : a domestic establishment; *specif* : a social

unit comprised of those living together in the same dwelling place."  Webster's Third New International Dictionary 1096 (unabridged ed. 1976).  Webster's also defines "live" as "to occupy a home : dwell, reside," id. at 1323 (capitalization omitted), and in turn, defines "reside" as "to dwell permanently or continuously : have a settled abode for a time : have one's residence or domicile," id. at 1931.

Moreover, common sense and common usage support my interpretation of the phrase.  Most people understand the term "household" to incorporate characteristics of permanency and connection that the court's definition fails to apprehend.  I find it hard to believe that the Conway voters who voted to adopt this ordinance in 1980 thought that the term "living as a household" would refer, for example, to a group of five individuals who were childhood friends and now live in cities across the country, and gather every few years to rent a house in Conway for a weekend.  Vacationers who spend only a few days together and have their primary residences in separate locations outside of Conway do not enjoy the sense of permanency and stability that the phrase "living as a household" demands.

I am not alone in reaching this conclusion.  Courts throughout the country have analyzed the same issue and concluded that the term "household" and similar phrases require some sort of permanency.  It is not enough to merely be alive in the same place at the same time.  See, e.g., Styller v. Zoning Bd. of Apps. of Lynnfield, 169 N.E.3d 160, 171 (Mass. 2021) (interpreting the ordinance's definition of "family," defined to include "[a]ny number of persons living and cooking together on the premises as a single housekeeping unit," to incorporate a "concept of permanency" (quotation omitted) (emphasis added)); Slice of Life v. Zoning Hearing Board, 207 A.3d 886, 899 (Pa. 2019) ("This Court has adopted the common definition of single housekeeping unit, used by courts throughout the country, as requiring the person or persons residing in the home to function as a family and to be sufficiently stable and permanent and not purely transient." (quotations omitted)); Rhode Island School of Design v. Begin, No. PC-2020-06584, 2021 WL 5492870, at *13-14 (R.I. Super. Ct. Nov. 12, 2021) (explaining that "[t]he term 'household' has been interpreted in several other contexts to require much more than merely being alive in the same place at the same time" and citing cases).

Because the definition of "living as a household" requires a degree of permanency and connection that the transient occupants of the defendant's properties do not possess, those persons are not "living as a household." Accordingly, I conclude that non-owner-occupied STRs do not fall within the definition of "residential/dwelling unit," and therefore are not permitted in residential districts.  See CZO § 190:31; CZO § 190 Attachment 2:4.  I respectfully dissent.

11